**Thomas CHESTER, Appellant**

v.

**Dr. Nayer EL–ASHRAM, Appellee.**

No. 05–05–01635–CV.

Court of Appeals of Texas, Dallas.

July 3, 2007.

William E. Zook, Ted B. Lyon & Associates, P.C., Mesquite, for appellant.

Jeffery Mark Kershaw, David M. Walsh IV, Chamblee & Ryan, P.C., Dallas, for appellee.

Before Justices WHITTINGTON, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This case involves a health care liability claim arising under former article 4590i.[1] Appellee Dr. Nayer El–Ashram filed a motion to strike the testimony of appellant Thomas Chester's expert on the grounds the expert was not qualified to render an opinion regarding the standard of care and causation and his opinion was not reliable. The trial court granted the doctor's motion and excluded the expert's testimony. The doctor then filed a no-evidence motion for summary judgment, which the trial court granted. On appeal, Chester argues the trial court erred by striking the testimony of his sole medical expert and granting summary judgment in favor of the doctor. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

On October 28, 2001, Chester presented to the emergency room of Medical Center of Mesquite with complaints of chest pain, cough with blood in the sputum, and difficulty breathing. He had a history of smoking, diabetes, obesity, and hypertension. He was diagnosed with pneumonia and admitted under the care of Dr. El–Ashram, a pulmonary doctor. El–Ashram began oxygen therapy and monitored Chester's progress, increasing the supplemental oxygen as Chester's respiratory rate increased, and eventually moving Chester to the progressive care unit and placing him on a ventilator mask with maximum supplemental oxygen. Chester's condition continued to deteriorate and, on November 2, 2001, Chester's family changed his care to a different pulmonary specialist. This doctor intubated Chester immediately. Shortly thereafter, Chester fell into a two-month coma, suffered multiple organ failure, and underwent emergency surgery that caused an inoperable surgical hernia. Chester also required a long hospital rehabilitation.

Chester filed this lawsuit on August 22, 2003. He alleges that El–Ashram rendered negligent care and treatment from October 28 until November 2 because he did not recognize Chester's impending respiratory failure. He contends El–Ashram should have intubated him no later than November 1, 2001, and that by the time he was intubated by a different pulmonologist on November 2, the prolonged respiratory failure had already caused severe damage to his organs. Chester alleges he is totally disabled as a result of El–Ashram's negligence.

## STANDARD OF REVIEW

■ Expert testimony ordinarily is required in a medical malpractice lawsuit. *Broders v. Heise*, 924 S.W.2d 148, 151

---

1. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–41.05, 1977 Tex. Gen. Laws 2039–64 (subsequent amendments omitted) (former Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Supp.2003)) (hereinafter article 4590i), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–74.507 (Vernon Supp.2005)).

(Tex.1996). The trial court has broad discretion to determine admissibility of expert testimony. *Larson v. Downing,* 197 S.W.3d 303, 304–05 (Tex.2006). We will not reverse the trial court's ruling absent a clear abuse of that discretion. *Id.* A trial court abuses its discretion only if it acts arbitrarily or capriciously, without reference to any guiding rules or principles. *Id.* Because the trial court did not specify the ground on which it excluded Dr. Ender's testimony, we will affirm the trial court's ruling if any ground is meritorious. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000).

QUALIFICATIONS OF AN EXPERT WITNESS

■ Only a physician who satisfies specific requirements may qualify as an expert witness on the issue of whether another physician departed from accepted standards of medical care in a health care liability claim against that physician for injury to a patient. The statute governing this claim, article 4590i § 14.01, provided that, to be qualified as an expert, the physician

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Article 4590i § 14.01(a). "Practicing medicine"

includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians.

*Id.* § 14.01(b).

The statute further provides that, in determining whether an expert is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id.* § 14.01(c).

■ To comply with section 14.01's requirements, the proponent of the expert's testimony has the burden to show that the expert "possess[es] special knowledge as to the very matter on which he proposes to give an opinion." *See Broders,* 924 S.W.2d at 152–53; *see also Clark v. HCA, Inc.,* 210 S.W.3d 1, 7 (Tex.App.-El Paso 2005, no pet.) (discussing *Broders* in analyzing expert's qualifications under section 14.01 of former article 4590i); *Daniels v. Yancey,* 175 S.W.3d 889, 893–94 (Tex. App.-Texarkana 2005, no pet.) (same); *Forrest v. Danielson,* 77 S.W.3d 842, 847–48 (Tex.App.-Tyler 2002, no pet.) (same); *Hagedorn v. Tisdale,* 73 S.W.3d 341, 349 (Tex.App.-Amarillo 2002, no pet.) (same). "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders,* 924 S.W.2d at 153–54 (quoting *Ponder v. Texarkana Mem'l Hosp.,* 840 S.W.2d 476, 477–78 (Tex.App.-Houston [14th Dist.] 1991, writ denied)). An expert from a different field from the defendant physician may testify "so long as the 'subject of inquiry is common to and equally

recognized and developed' in both fields." *Id.* at 152 (quoting *Hart v. Van Zandt,* 399 S.W.2d 791, 797–98 (Tex.1965)). Additionally, when the offering party shows a subject is "substantially developed in more than one field, testimony can come from a qualified expert in any of those fields." *Id.* at 154.

Nevertheless, a trial court does not abuse its discretion by excluding the testimony of an expert physician when that physician has not been shown to be qualified to treat an injury like the one at issue in the case. *See Larson,* 197 S.W.3d at 305. And when the evidence shows the physician has not performed the procedure at issue in many years and has not taught the procedure, the trial court does not abuse its discretion by excluding the testimony. *Id.; see Broders,* 924 S.W.2d at 153.

## No-Evidence Summary Judgment

When a defendant files a motion for summary judgment asserting there is no evidence of one or more essential elements of the plaintiff's claims, the burden shifts to the plaintiff to present enough evidence to raise a genuine fact issue on the challenged elements. Tex.R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *Patino v. Complete Tire, Inc.,* 158 S.W.3d 655, 659 (Tex.App.-Dallas 2005, pet. denied); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet). If the plaintiff does not raise a fact issue, the trial judge must grant the motion. *Patino,* 158 S.W.3d at 659.

## Discussion

Chester designated Jeffrey Ender, D.O., a board-certified anesthesiologist, as his testifying expert on the standard of care and causation against El–Ashram, a pulmonologist. Dr. Ender's curriculum vitae is not part of the record, nor is the transcript of the hearing on the motion to strike. In his deposition and affidavit, Dr. Ender states he graduated from medical school in 1991, started his internship in 1992, and completed his fellowship in 1996. He became board certified in anesthesiology in 1996. In 2001, he was licensed in Texas and began practicing medicine at Texas Children's Hospital in pediatric anesthesiology, where he stayed until January 2005. At that time, he relocated his practice to Las Vegas, Nevada, where he is an anesthesiologist on the staff of approximately fifteen area hospitals and surgical clinics.

While at Texas Children's Hospital, one of Dr. Ender's primary jobs was to assess patients for surgery. If necessary, he consulted with other specialists about changes in a patient's medical therapy to make the patient a more fit candidate for anesthesia. He testified the majority of his patients were children. Since January 2005, when he moved his practice to Las Vegas, Dr. Ender stated he has averaged about thirty anesthesiology cases per week, or about 700 anesthesiology cases total through July 2005. He estimated that ninety percent of those cases involved adult patients requiring intubation or other supplemental oxygen for surgical procedures. And he stated his evaluations included adult patients with similar conditions and diseases as Chester, including diabetes, hypertension, obesity, high cholesterol, smoking, pneumonia, respiratory distress syndrome, and renal and other organ failure. He stated his responsibility is to review all the patient's records related to supplemental oxygenation and evaluate conditions that might affect the patient's ability to withstand the surgery.

Dr. Ender concluded that El–Ashram was negligent because he failed to recognize that Chester was in respiratory distress and that his condition was worsening;

failed to begin oxygen therapy, endotracheal tube intubation, and broad spectrum antibiotics; and failed to perform arterial blood gas tests. Dr. Ender acknowledged that El–Ashram gave Chester oxygen therapy and antibiotics, but he concluded it was not enough.

Dr. Ender's deposition and affidavit do not state his qualifications for or experience with handling pulmonary patients such as Chester. *See* article 4590i § 14.01(c). In fact, Dr. Ender testified that his education and training in critical care management of patients was limited to two months during residency, three months during internship, and one month during fellowship, all of which was prior to 2001. Before he moved to Las Vegas in January 2005, he had never prescribed broad spectrum antibiotics to a patient and had not intubated a patient since June 1996. And he admitted he did not know whether the antibiotics El–Ashram gave to Chester were broad spectrum antibiotics, because antibiotics are "out of my area of expertise." Although Dr. Ender states he has handled cases since January 2005 in which the patient required intubation, his primary job remains assessing patients for surgery and determining whether they are fit candidates for anesthesia.

Dr. Ender admitted that he does not order tests such as those ordered for Chester, and he admitted that he does not serve as the primary treating physician for patients with conditions similar to Chester's. Although Dr. Ender states he evaluates patients for surgery who present with conditions similar to those of Chester, he does not explain how evaluating a patient for a surgical procedure renders him qualified to testify about the care Chester, who was not admitted for a surgical procedure, should have received.

In short, Chester did not show that Dr. Ender had substantial training or experience in an area of medical practice relevant to Chester's claim and did not show that he is actively practicing medicine in rendering medical care services relevant to Chester's claim. *See* article 4590i § 14.01(c). As a result, the trial court did not act without reference to any guiding rules or principles and did not abuse its discretion by striking his expert's testimony. *See Larson,* 197 S.W.3d at 304 (trial court did not clearly abuse discretion by excluding testimony of expert because it had been fifteen years since physician had performed surgery like that performed by defendant).

Chester also argues the trial court erred by denying his motion for rehearing on the motion to strike. But the motion for rehearing did not assert any new theories; it merely re-urged the same arguments. Having determined the trial court did not abuse its discretion by striking the expert's testimony, we similarly conclude the trial court did not err by denying Chester's motion for rehearing on this issue.

■ Chester further contends the trial court erred by granting El–Ashram's no-evidence motion for summary judgment. However, Chester did not offer any other expert evidence in response to El–Asham's no-evidence motion for summary judgment. And Chester conceded that without Dr. Ender's testimony, he had no expert witness. Without expert testimony in a medical malpractice action, there is no issue to submit to the jury. *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 875–76 (Tex.2001). Accordingly, the trial court did not err by granting summary judgment in favor of El–Ashram.

We overrule Chester's first and third issues. Because of our disposition of these issues, we do not reach Chester's second

issue concerning the reliability of Dr. Ender's testimony.

We affirm the trial court's judgment.