

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00284-CV

**ROYAL H. BENSON, III, M.D.,**

                                                                            **Appellant**

 **v.**

**JENNIFER S. HALL AND SCOTT M. HALL,**

                                                                            **Appellees**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 08-002788-CV-272

## MEMORANDUM  OPINION

Royal H. Benson, III, M.D. appeals the denial of his motion to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2009).  Because the trial court did not abuse its discretion in determining the expert is qualified to render an expert opinion, we affirm the judgment of the trial court.

Jennifer Hall consulted with Benson and on the same day, Benson performed gynecological cosmetic surgical procedures.  Hall later filed a lawsuit against Benson

alleging that Benson was negligent in performing the surgical procedures. Hall submitted an expert report by Dr. Bruce Halbridge.

In one issue, Benson contends that the trial court abused its discretion in denying his motion to dismiss because Hall failed to show that Halbridge was qualified to provide opinions on the standard of care for performing the surgical procedures.

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). Similarly, we review a trial court's determination of whether a physician is qualified to give an opinion in a health care liability case under an abuse of discretion standard. *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006) (per curiam); *Baylor College of Med. v. Pokluda*, 283 S.W.3d 110, 116-117 (Tex. App.—Houston 14th Dist. 2009, no pet.).

To provide opinion testimony in a healthcare liability claim, the expert must be qualified to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5) (Vernon Supp. 2009). Qualifications must appear in the expert report and cannot be inferred. *Baylor College of Med.*, 283 S.W.3d at 117 (citing *Olveda v. Sepulveda*, 141 S.W.3d 679, 683 (Tex. App.—San Antonio 2004, pet. denied); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex. App.—Dallas 2003, pet. denied)). To be qualified to provide opinion testimony regarding whether a physician departed from the accepted standard of health care, an expert must satisfy section 74.401. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(A) (Vernon Supp. 2009). Section 74.401 provides in relevant part:

(a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

*\*\**

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*\*\**

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id.* § 74.401(a), (c) (Vernon 2005).

Benson takes issue with the expert's qualifications pursuant to subsection (c)(2). Benson argues that there was no evidence that Halbridge had performed two of the procedures, the vaginoplasty and the clitoral hoodectomy,[1] in the last 33 years and no evidence of when Halbridge had last performed or how many times he had performed the remaining procedure, the labioplasty. Thus, his argument continues, the trial court had no basis to conclude that Halbridge "was actively practicing medicine providing the care relevant to [Hall's] claim at the time the claim arose or currently."

Benson relies primarily on three cases to support his argument. His reliance on those cases is misplaced. Citing to *Larson v. Downing*, 197 S.W.3d 303 (Tex. 2006), Benson asserts that the Texas Supreme Court has held that an expert is not qualified on

---

[1] This procedure is not mentioned specifically in Hall's petition.

surgical procedures if the expert has not performed the procedure in at least eleven years. But in *Larson*, it was the trial court that excluded the plaintiff's expert because it had been fifteen years since he had performed surgery like that performed by the defendant. In affirming the trial court's decision, the Supreme Court said, "[w]hether to exclude Bell's testimony is a close call on this record. Close calls must go to the trial court." *Id*. at 304. The Supreme Court did not impose a time frame within which an expert must perform a procedure to be qualified to render an expert opinion.

Benson also relies on the Dallas Court's opinion in *Chester v. El-Ashram*, 228 S.W.3d 909 (Tex. App.—Dallas 2007, no pet.) to support his argument. As in *Larson*, the trial court excluded the expert's testimony. The Dallas Court held that because the expert admitted that he did not order tests such as those ordered for the plaintiff, did not serve as the primary treating physician for patients with conditions similar to plaintiff's, and although the expert stated he evaluated patients for surgery who present with conditions similar to those of the plaintiff, did not explain how evaluating a patient for a surgical procedure rendered him qualified to testify about the care the plaintiff, who was not admitted for a surgical procedure, should have received, the trial court did not abuse its discretion in excluding the testimony. *Id*. at 914. Again, the Dallas Court did not impose a time frame within which an expert must perform a procedure to be qualified to render an expert opinion.

The third case Benson places reliance on for his argument that Dr. Halbridge is not qualified is *In re Windisch*, 138 S.W.3d 507 (Tex. App.—Amarillo 2004, no pet.). Benson contends that the Amarillo Court reversed a denial of a motion to dismiss

because the expert's experience during his fellowship and earlier in his career did not make him qualified to render an opinion on a procedure that he had not performed in 14 years. That is not an accurate depiction of the court's holding. Although part of the holding, the court was more concerned with the conclusory nature of the expert's statement of his qualifications. There was a gap between the expert's earlier career and the procedure complained of that was not "bridged" by the conclusory references to the expert's "'extensive' background in neuroradiology." *Id.* at 513-514. No specific time frame was required.

Benson construes the statute too narrowly. Rather than having the trial court consider whether the expert is actively practicing medicine in rendering medical care services *relevant to the claim* as the statute requires, Benson would require the trial court to find the expert not qualified if he had not performed a procedure within a specific and short period of time from the time the claim arose or when the testimony is given. The phrase "relevant to the claim" is broad, not narrow. And generally, qualification of an expert depends on whether the offering party has established that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003).

Hall alleged in her petition that Benson was negligent in performing labioplasty and vaginoplasty surgical procedures. In his report, Halbridge stated that he is a medical doctor currently licensed to practice in obstetrics and gynecology. He stated that during his four year residency training in obstetrics and gynecology, he trained at

the Bronx Municipal Hospital Center and the Brookdale Hospital Medical Center.  Each medical center had 1000 beds and was a large and busy clinic facility.  He also stated that the volume of cases and the presence of well trained and very experienced doctor-professors enabled him to learn labioplasty, vaginoplasty, and surgery involving the clitoris by performing hundreds of such cases.[2]  During the third year of his residency, he very frequently operated with an oncologic surgeon who was the Chairman of the Department of Obstetrics and Gynecology at the Brookdale Hospital Medical Center.  That surgeon personally trained Halbridge in all surgeries involving the vulvar structures including the labia minor, labia majora, the clitoris, and its hood including the underlying blood supply and lymph nodes.  The majority of the cases Halbridge saw involved benign diseases of the vulva and vagina that included vaginal laxity and associated labioplasty.  The obstetrical part of his training included repairs and reconstruction of labias damaged during childbirth.  Halbridge stated that the total number of both gynecological and obstetrical cases where repair, revision of the labia, or reversal of previous injury that he performed during his training years totaled more than 400 cases.  He further stated that in the 33 years of clinical practice since his graduation from residency, he has performed numerous labioplasty surgeries as well as repairs of labial injuries.

Halbridge's Curriculum Vitae reveals that he is board certified in obstetrics and gynecology.  He is also a Fellow in the American College of Obstetricians and

_____

[2] We note that a portion of the report addresses the counseling and additional testing necessary before performing surgery of this nature, particularly the clitoral hoodectomy.  He opined that under the circumstances, the surgery should not have been done due to inadequate patient counseling and testing.

Gynecologists. From 1989 through 1996, Halbridge has been a chief of the OB/GYN department at three hospitals, a vice chief of staff at one hospital, and a chief of staff at one hospital. In 2006, Halbridge was a member of a peer review committee at Memorial Hermann Hospital-Southwest.

The trial court was required to consider whether Halbridge was actively practicing medicine in rendering medical care services *relevant to the claim*. In reviewing the report and curriculum vitae, we cannot say that the trial court abused its discretion in finding Halbridge qualified to render an expert opinion. Benson's sole issue is overruled.

Having overruled the only issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
 Justice Reyna, and
 Justice Davis
Affirmed
Opinion delivered and filed February 3, 2010
[CV06]