Gregory **NEWMAN**, D.O., Appellant,

v.

Joel **GRAHAM**, Appellee.

No. 05–09–01308–CV.

Court of Appeals of Texas, Dallas.

June 22, 2010.

Charles Timothy Reynolds, Aaron D. Nadeau, Steed Flagg, L.L.P., Rockwall, for appellant.

Marisa M. Schouten, Martin Walker P.C., Tyler, for appellee.

Before Justices MORRIS, BRIDGES, and FILLMORE.

## OPINION

Opinion by Justice FILLMORE.

This interlocutory appeal follows the trial court's refusal to dismiss Joel Graham's health care liability claims against Gregory Newman, D.O. In one issue, Dr. Newman complains the trial court erred by overruling his objections to the qualifications of Graham's expert and denying his motion to dismiss Graham's health care liability claims We affirm the trial court's order.

## Background

Graham sought treatment at the Limestone Medical Center emergency room due to erratic behavior and changes in his thought processes. Dr. Newman was Graham's admitting physician in the emergency room. Although Dr. Newman noted that Graham did not have a preexisting psychiatric history, he diagnosed Graham with a psychiatric condition and placed Graham on medications for that condition. The following day, Graham was transferred to the Austin State Hospital. The record is unclear as to how long Graham remained hospitalized.

Graham alleges he took medication for a psychiatric condition for almost a year. Because his condition continued to deteriorate, Graham sought treatment at Green Oaks Behavioral Health Center, a psychiatric hospital. Graham was again discharged with a diagnosis of a psychiatric condition. Nine days later, Graham sought treatment at Navarro Regional Hospital. A CT scan performed during his treatment showed a large tumor deforming Graham's brain. Dr. Stasha Gominak, a neurologist, removed the tumor. In Dr. Gominak's opinion, the tumor was the cause of Graham's symptoms, and the delay in diagnosing and removing the tumor caused permanent damage to Graham's vision and permanent changes in his thought processes and behavior.

Graham filed this health care liability claim alleging Dr. Newman was negligent in his treatment of Graham by failing to properly assess Graham's abnormal behavior and render a proper diagnosis; failing to give Graham a CT scan to rule out an organic cause for his abnormal behavior; improperly treating Graham with psychiatric medications; failing to recognize, appreciate, and diagnose the brain tumor; and failing to immediately treat the brain tumor with referral to a neurologist or a neurosurgeon and surgery. Graham attached to his petition the expert report and curriculum vitae of Dr. Gominak. Dr. Newman objected to Dr. Gominak's expert report, arguing it was insufficient under section 74.351 of the civil practice and remedies code because it failed to establish Dr. Gominak was qualified to opine about Dr. Newman's treatment of Graham. Within 120 days of filing his petition, Graham filed a supplemental report from Dr. Gominak. Dr. Newman objected to the supplemental report, asserting it failed to correct the deficiencies in the original report, and requested that the trial court dismiss the case due to Graham's failure to file an adequate expert report. The trial court denied Dr. Newman's motion to dismiss, and Dr. Newman filed this interlocutory appeal.

## Analysis

In his sole issue, Dr. Newman asserts the trial court erred by overruling his objections to Dr. Gominak's qualifications and denying his motion to dismiss because Dr. Gominak was not qualified to render an expert opinion that Dr. Newman breached the applicable standard of care. Specifically, Dr. Newman argues Dr. Gominak failed to show that the subject of diagnosis of a brain tumor is sufficiently developed in both the fields of neurology and emergency room medicine or that Dr. Gominak is familiar with the standard of care applicable to Dr. Newman's treatment of Graham.

The trial court has broad discretion in determining the admissibility of expert testimony in a health care liability case. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex.2006) (per curiam); *Chester v. El-Ashram*, 228 S.W.3d 909, 912 (Tex.App.-Dallas 2007, no pet.). We will not reverse the trial court's ruling absent a clear abuse of that discretion. *Larson*, 197 S.W.3d at

304–05; *Chester,* 228 S.W.3d at 912. A trial court abuses its discretion only if it acts arbitrarily or capriciously or without reference to any guiding rules or principles. *Larson,* 197 S.W.3d at 304–05; *Chester,* 228 S.W.3d at 912.

Within 120 days of filing a health care liability claim, a plaintiff must serve an expert report with the expert's curriculum vitae on each defendant against whom a liability claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2009). An "expert report" is a:

> written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). The trial court is required to dismiss the lawsuit if, after a hearing, it determines the report does not constitute an objective good faith effort to comply with the statutory requirements. *Id.* § 74.351(b)(2), (*l*).

■ A person is qualified to render an opinion as an expert witness on the issue of whether a physician departed from accepted standards of medical care only if the person is a physician who: (1) is practicing medicine at the time the testimony is given or was practicing medicine at the time the claim arose; (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. *Id.* §§ 74.351(r)(5)(A); 74.401(a) (Vernon 2005). To assist the court in making a determination as to whether the expert is qualified on the basis of training or experience, the statute requires the trial court to "consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim." *Id.* § 74.401(c). Analysis of the expert's qualifications is limited to the expert's report and the expert's curriculum vitae. *Mosely v. Mundine,* 249 S.W.3d 775, 779 (Tex.App.-Dallas 2008, no pet.).

■ Not every licensed doctor is automatically qualified to testify on every medical question. *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996). However, "expert qualifications should not be too narrowly drawn," *Larson,* 197 S.W.3d at 305, and a proffered expert need not practice in the same specialty as the defendant physician to qualify as an expert in that case. *Roberts v. Williamson,* 111 S.W.3d 113, 122 (Tex.2003). Rather, the trial court should determine whether the proffered expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders,* 924 S.W.2d at 153–54; *see Chester,* 228 S.W.3d at 912. The focus is on whether the expert's expertise goes to the very matter on which she is to give an opinion. *Broders,* 924 S.W.2d at 153; *see also Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex.App.-Dallas 2007, pet. denied) (op. on reh'g) (focus "is on the 'fit' between the subject matter at issue and the expert's familiarity" with it, "not on a comparison of the expert's title or specialty with that of the defendant").

■ A medical expert with a different specialty than the defendant physician

may testify "so long as the 'subject of inquiry is common to and equally recognized and developed' in both fields." *Broders,* 924 S.W.2d at 152 (quoting *Hart v. Van Zandt,* 399 S.W.2d 791, 797–98 (Tex. 1965)); *see Chester,* 228 S.W.3d at 912–13; *Carreras v. Trevino,* 298 S.W.3d 721, 724 (Tex.App.-Corpus Christi 2009, no pet.) (expert qualified to testify if she has practical knowledge of what is customarily done by practitioners of different specialty under circumstances similar to those at issue in case). When the offering party shows a subject is "substantially developed in more than one field, testimony can come from a qualified expert in any of those fields." *Broders,* 924 S.W.2d at 154; *see Chester,* 228 S.W.3d at 913; *Keo v. Vu,* 76 S.W.3d 725, 732 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

Graham's expert, Dr. Gominak, has been licensed to practice medicine since 1983. She was board certified in psychiatry and neurology in 1989 and in electrodiagnostic medicine in 1990. Between 1989 and 2004, she was an assistant professor in the department of neurology at two different hospitals. Dr. Gominak has also been engaged in the private practice of neurology since 1991.

During her residency in neurology, Dr. Gominak received twelve weeks of training in the emergency room on the primary evaluation of patients presenting with abnormal behavior. From 1989 until 2004, she taught neurology residents about the diagnosis and treatment of neurology patients. Further, for twenty-four years, Dr. Gominak has seen patients in the emergency room, in the hospital, and in her private practice regarding questions of abnormal thought process, paranoia, manic behavior, memory disorders, head pain, walking difficulty, and other symptoms. According to Dr. Gominak, these symptoms are also seen by emergency room physicians on a regular basis.

On a daily basis, Dr. Gominak is called by emergency room physicians about the "cause and/or treatment of patients with complaints or behavior that could be either psychiatric or neurologic." Since her residency training, she has been asked on a daily basis to see and admit patients from the emergency room for neurologic complaints. She is required to assess the patient's history, ask for the necessary accompanying laboratory or scan results, and give advice to the physician about further treatment or investigation. Although Dr. Gominak admitted she was not trained in other emergency room diagnoses, she was "most certainly very familiar with the triage and examination of patients in the emergency room with abnormal behavior."

According to Dr. Gominak:

The job of the emergency room physician is to triage and evaluate for possible admission. They make use of specialists for additional information but usually are asked to do the preliminary evaluation of the patient to decide which medical or surgical specialty should see the patient. As I see a patient in the emergency room I am subject to the same standard of care, and I require the same basic information that the emergency room physician must use to evaluate the patient. Therefore in this area our two specialties and our standard of care are identical.

In performing the evaluation, the emergency room physician is required to "eliminate all of the medical or neurologic causes of abnormal behavior before calling in the psychiatrist."

The conduct allegedly causing Graham's injuries related to the need to rule out an organic cause of his symptoms prior to diagnosing a psychiatric condition. Dr. Gominak's expert report and curriculum

vitae established she has knowledge, skill, training, and education in both her own field of neurology and Dr. Newman's field of emergency medicine as it pertains to the treatment of a patient presenting with abnormal behavior. *See Broders,* 924 S.W.2d at 153; *Mosely,* 249 S.W.3d at 779–80; *Simonson v. Keppard,* 225 S.W.3d 868, 874–75 (Tex.App.–Dallas 2007, no pet.). Further, Dr. Gominak established that the subject of assessment and treatment of patients presenting with abnormal behavior was substantially developed in both neurology and in emergency medicine and that the standard of care was the same in both fields. *See Romero v. Lieberman,* 232 S.W.3d 385, 392 (Tex.App.–Dallas 2007, no pet.) (expert report and CV showed expert's qualifications to testify about "the standard of care as to the evaluation and treatment of septicemia by all medical doctors"); *Blan v. Ali,* 7 S.W.3d 741, 746–47 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (expert qualified to give opinion based on offering testimony "clearly within his knowledge" and establishing standard of care applied to any physician treating patient for stroke).

Given the nature of Graham's claims and the opinions proffered by Dr. Gominak, we conclude the trial court did not abuse its discretion by concluding Dr. Gominak was qualified to render those opinions or by denying Dr. Newman's motion to dismiss Graham's health care liability claims. We overrule Dr. Newman's sole issue and affirm the trial court's order.