**AFFIRM in part and REVERSE and REMAND in part; and Opinion Filed August 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-01140-CV**
_____

**MARCUS SMITH, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF CELIA B. SMITH, DECEASED, Appellant**
**V.**
**NEXION HEALTH AT MCKINNEY, INC. D/B/A MCKINNEY HEALTHCARE AND REHABILITATION CENTER AND MENUR BESHIR, LVN, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-02258**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Molberg and Carlyle
Opinion by Chief Justice Burns

In this medical negligence action, appellant Marcus Smith, individually and as representative of the estate of Celia B. Smith, appeals the trial court's order granting summary judgment in favor of appellees Nexion Health at McKinney, Inc. d//b/a McKinney Healthcare and Rehabilitation Center (MHRC) and Menur Beshir, LVN. In four issues, appellant contends the trial court erred in granting summary judgment because there are genuine issues of material fact as to (1) whether

appellees' negligent acts proximately caused Smith's death; (2) the applicable standard of care, breaches by, and causation attributable to Beshir; (3) whether appellees' objection to the qualifications of appellant's expert witness to testify on Beshir's standard of care was untimely; and (4) whether the summary judgment granted more relief than appellees requested. We affirm in part and reverse and remand in part.

## Background

Celia Smith, a 91-year-old female with a history of dementia, hypertension, and transient ischemic attack (TIA), was a MHRC resident.[1] She was on a pain management program and received physical therapy, occupational therapy, speech therapy, and preventative skin care. Smith also required anticoagulation therapy via Coumadin and frequent, serial coagulation level checks by Prothrombin Time Test/International Normalized Ratio (PT/INR). She required assistance to bathe and dress, but ate independently and was mobile in a wheelchair.

After a March 15, 2019 PT/INR, Smith's Coumadin dosage was increased; it was increased again on March 25. On March 26, Smith became lethargic with poor oxygenation and a temperature of 103.6°F. The next day, she was admitted to Medical City McKinney (the hospital) for further evaluation and management of sepsis. At the hospital, she was found to have a urinary tract infection (UTI). On

---

[1] This background is drawn from evidence submitted with the parties' briefing on the summary judgment motion and a motion to exclude expert testimony filed by appellees and appellant's second amended petition.

March 28, she suffered nasal bleeding that contributed to respiratory distress requiring intensive care treatment. The bleeding subsided, and her sepsis resolved with antibiotic treatment.

Smith was discharged on April 4; her Coumadin was discontinued upon her return to MHRC. She continued to be lethargic with decreased cognition. On April 9, her blood count revealed an elevated white blood cell count, but other values were close to her baseline and unremarkable. On April 10, Smith's attending physician, Dr. Zafar, ordered a UA Culture and Sensitivity (UA C&S) and prescribed an antibiotic. Dr. Zafar also ordered an infectious disease consult to check for C-diff and, on April 11, Dr. Ahmed prescribed an additional antibiotic and lactobacillus.

On April 12, Smith returned to the hospital in acute respiratory distress. She experienced a cardiopulmonary arrest approximately six minutes after her arrival and was declared dead approximately two and one-half hours later.

Appellant, Smith's son, brought this medical negligence action against MHRC and Beshir, one of the nurses who cared for Smith. Appellant alleges a number of failures, including failing to follow physician orders, implement nursing interventions, and perform and report appropriate nursing assessments, by MHRC staff and Beshir. Appellant further alleges that (1) the failure to obtain and monitor PT/INR levels and administering Coumadin without the required PT/INR levels was the proximate cause of Smith's first hospitalization, and (2) Smith subsequently suffered from "urosepsis, fulminant colitis, or a combination of the two" and the

failure to administer antibiotics and lactobacillus or obtain UA C&S and stool samples caused Smith's infection to deteriorate into "sepsis, septic shock and death." On behalf of Smith's estate, appellant seeks survival damages; individually, appellant seeks damages for Smith's wrongful death.

Appellant designated Summit Gupta, M.D., a geriatrician and wound care physician, as an expert witness. Dr. Gupta prepared an expert report and testified by deposition. Thereafter, appellees filed both a motion to exclude Dr. Gupta's testimony and a no-evidence and traditional summary judgment motion. Appellees asserted that Dr. Gupta's opinions as to the cause of Smith's death were speculative and unreliable because he could not opine "to a reasonable degree of medical probability" that she suffered from either urosepsis or fulminant colitis and, therefore, that any act or omission by appellees caused her death. Absent Dr. Gupta's opinions, appellees were entitled to summary judgment because there was no evidence of proximate cause. Appellees also asserted that there was no evidence of medical negligence as to Beshir and that affirmative evidence negated breach on the part of Beshir.

Following a hearing on the motions, the trial court entered (1) an order excluding Dr. Gupta's opinions and testimony for all purposes, and (2) an order granting appellees' summary judgment motion and ordering that appellant take nothing by his claims against appellees. This appeal followed.

## Standard of Review

We review a trial court's decision to exclude an expert witness's testimony for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial court does not abuse its discretion simply because we would have decided the matter differently. *Id.* Instead, we must determine "whether the trial court acted without reference to any guiding rules or principles." *Id.* We must uphold the trial court's decision if there is any legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

We review a trial court's order granting summary judgment de novo; in doing so, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in favor of the nonmovant, and take as true all evidence favorable to the nonmovant. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). If the trial court grants summary judgment without specifying the grounds for the ruling, we must affirm the judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If a party moves for summary judgment on both traditional and no-evidence grounds, we generally address the no-evidence motion first. *See id.* If the challenge to the no-evidence motion fails, we need not consider the traditional motion. *Id.* However, if we are required to affirm a trial court's ruling on traditional grounds, we address only the traditional grounds. *Regency Dev. &*

*Constr. Servs., LLC v. Carrington*, No. 05-18-00564-CV, 2019 WL 4051831, at *4 (Tex. App.—Dallas Aug. 28, 2019, pet. denied).

A party may obtain a no-evidence summary judgment when there is no evidence of one or more of the essential elements of a claim on which an adverse party would have the burden of proof at trial. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citing TEX. R. CIV. P. 166a(i)). When a no-evidence motion is properly filed, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact on each challenged element. *Id*. We sustain a no-evidence challenge when the evidence offered to prove a vital fact is no more than a mere scintilla. *See Merriman*, 407 S.W.3d at 248. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

Under the traditional summary-judgment standard, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 213–14 (Tex. App.—Dallas 2015, no pet.); TEX. R. CIV. P. 166a(c). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *Id.* A genuine issue of material fact exists if the

non-movant produces more than a scintilla of probative evidence regarding the challenged element. *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied). A defendant is entitled to traditional summary judgment if it conclusively disproves at least one essential element of the plaintiff's claim or conclusively establishes every element of an affirmative defense. *Id.*

**Applicable Law**

To prevail on a medical negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty to act according to an applicable standard of care; (2) the defendant breached the standard of care; and (3) the defendant's breach proximately caused damages to the plaintiff. *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019). Establishing proximate cause requires evidence, to a reasonable degree of medical probability, that (1) the act or omission was a cause in fact of the injury and (2) the injury was foreseeable. *Windrum*, 581 S.W.3d at 777–79; *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 860 (Tex. 2009). A cause in fact "is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Windrum*, 581 S.W.3d at 777 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017)).

Expert testimony is required to establish breach of the standard of care and proximate cause in medical negligence actions. *See Jelinek*, 328 S.W.3d at 533; *Ocomen v. Rubio*, 24 S.W.3d 461, 466 (Tex. App.—Houston [1st Dist.] 2000, no

pet.).  For expert testimony to be admissible, the expert must be qualified, and his testimony must be relevant and based on a reliable foundation.  *Robinson*, 923 S.W.2d at 556.  "To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology." *Schronk v. Laerdal Med. Corp.*, 440 S.W.3d 250, 257 (Tex. App.—Waco 2013, pet. denied).

In a medical negligence case, the expert must, "to a reasonable degree of medical probability, explain how and why the negligence caused the injury." *Jelinek*, 328 S.W.3d at 536.  The expert cannot base the causal connection between a defendant's alleged negligence and a plaintiff's injury upon mere conjecture, guess, speculation, or possibility.  *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246–47 (Tex. 2008).  "If no basis for an expert opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence."  *See Bustamante*, 529 S.W.3d at 462.  "Stated differently, an expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of the statements to link the conclusions to the facts."  *Id.*  And, if the evidence demonstrates that there are other plausible causes of the injury or conditions that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty.  *See Jelinek*, 328 S.W.3d at 536 ("When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that 'in

–8–

medical probability' the injury was caused by the defendant's negligence. The expert must explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts.").

The proponent of expert testimony bears the burden of showing that the testimony is based on a reliable foundation. *See Robinson*, 923 S.W.2d at 556. The trial court does not determine whether the expert's conclusions are correct; instead, it determines whether the expert's analysis in reaching the conclusions is reliable considering all the evidence. *See Wiggs v. All Saints Health Sys.*, 124 S.W.3d 407, 410 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998)).

**Analysis**

In his first issue, appellant contends the trial court erred in granting summary judgment because there are genuine issues of material fact on whether appellees' negligent acts proximately caused Smith's death. Because appellant relies on Dr. Gupta's expert report and deposition testimony to raise a fact issue on the causal connection between Smith's death and appellees' negligence, we first must determine whether the trial court properly excluded Dr. Gupta's opinions.[2]

---

[2] Appellant did not raise a separate issue on appeal asserting that the trial court abused its discretion in granting the motion to exclude, but we consider the trial court's ruling because appellant's brief states that he is appealing both orders and the motion to exclude "is inextricably intertwined in the arguments made in connection" with the summary judgment motion. *See* TEX. R. APP. 38.1(f); *Rohrmoos v. Venture UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 480 (Tex. 2019) (court should "broadly construe issues to encompass the core questions and reach all issues subsidiary to and fairly included within them").

## 1. Exclusion of Expert Testimony

Appellees moved to exclude Dr. Gupta's testimony, asserting that his opinions were unreliable and inadmissible. Specifically, appellees argued that there was no evidence of either urosepsis or C. diff, one or both of which allegedly led to septic shock and Smith's death.

In his expert report, Dr. Gupta opined that, on the day Smith died, she had sepsis based on a reasonable degree of medical probability. He attributed the sepsis to urosepsis or C. diff infection:

> . . . Given [Smith's] recent urosepsis, [she] likely had a recurrence of urosepsis that contributed to her septic shock on April 12. The breaches in the standard of care by MHRC . . . contributed significantly to this recurrence of urosepsis by contributing significantly to the initial episode relating to the March 27 [hospital] admission.
>
> Another possible source for this sepsis may have been a C. diff infection which is the reason stated by the physicians, including the infectious disease specialist, for ordering Vancomycin . . . on [April 11]. [Smith] had risk factors for the development of this infection which included recent and prolonged broad-spectrum antibiotic treatment and hospital/ICU exposure, and the ordered Vancomycin would be required to prevent a C. diff infection from deteriorating into the severe form, fulminant colitis. . . . [T]he breaches in the standard of care by MHRC was a proximate cause of her hospitalization on March 27 and the corresponding antibiotic treatment which is likely why a C. diff infection would have developed. Therefore, in case [Smith] had a C. diff infection, it was proximately caused by the aforementioned breach.
>
> Based on a reasonable degree of medical probability, [Smith] suffered from septic shock due to urosepsis, fulminant colitis, or a combination of the two. As stated, the breaches in the standard of care by MHRC contributed to the recurrence of the urosepsis and/or

–10–

fulminant colitis, depending on which case. Therefore, these breaches contributed to the septic shock and the death of [Smith].

As support for his opinions, Dr. Gupta's report cites an April 9 blood count, which "revealed marked leukocytosis with a white blood cell (WBC) count of 25.7." Thereafter, Dr. Zafar ordered a chest x-ray, blood cultures, a UA C&S, antibiotics, and an infectious disease consult. Dr. Ahmed prescribed additional medication and ordered that a stool sample be tested for C. diff. According to Dr. Gupta's report, there were hospital lab findings consistent with sepsis.[3] Dr. Gupta testified that, having diagnosed sepsis, he "went to" "infection either of the colon or the urinary tract" because no "proper workup" had been done. He acknowledged, however, that Smith had been tested for infection at the hospital and her blood cultures were negative for all bacteria. And, according to Dr. Gupta, the way to test for an infection is to look for bacteria.

Appellees contend that the trial court properly excluded Dr. Gupta's opinion as to the cause of Smith's death because he could not opine to a reasonable degree of medical probability that Smith actually suffered from a UTI, a C. diff infection,

---

[3] Whether Smith had sepsis is disputed. The hospital attributed Smith's death to cardiac arrest, cause unspecified. As support for his diagnosis that sepsis led to Smith's death, Dr. Gupta pointed to a hospital lab report showing Smith had a procalcitonin level at 1.98 and a note on the report, which indicated that "a concentration under 0.5 represents a low risk of severe sepsis and/or septic shock" and "a concentration greater than 2 represents a high risk of severe sepsis and/or septic shock." Dr. Gupta also noted that Smith's WBC count at the hospital was 17.5. That count, however, was lower than the 25.7 recorded on April 9. Dr. Gupta acknowledged that the hospital screened Smith for sepsis on her admission, but found that her temperature, heart rate, and respirations indicated that she was not suffering from sepsis. He disagreed, explaining that Smith "had infection that causes systemic reaction." Dr. Gupta further testified that Smith "had evidence of end organ damage to qualify for sepsis, which includes cardiovascular with hypertension" and "qualifie[d] for shock given the hypotensive state that led to the cardiac arrest."

–11–

urosepsis, or fulminant colitis or that any act or omission on the part of appellees caused an infection. On this record, we agree.

Appellant had the burden of showing that Dr. Gupta's opinions rested on a reliable foundation. *See Robinson*, 923 S.W.2d at 556. Dr. Gupta agreed that his opinion was grounded in two possibilities: (1) a UTI led to urosepsis, which led to sepsis and septic shock; or (2) a C. diff infection led to fulminant colitis, which led to sepsis and septic shock. His report asserts that Smith was "likely" to have had a recurrence of urosepsis or "[a]nother possible source" for sepsis "may have been a C. diff infection" because she "had risk factors for the development of [the] infection." Mere possibility, however, like speculation or conjecture, is not a basis for a qualified opinion based on reasonable medical probability. *Hogue*, 271 S.W.3d at 247; *e.g.*, *Eaglin v. Purcell*, No. 02-20-00199-CV, 2021 WL 126595, at *5 (Tex. App.—Fort Worth Jan. 14, 2021, pet. denied) (mem. op.) (expert's "likely" medical explanation as to how decedent went into arrest after discharge from hospital is "mere guesswork" and no evidence of a substantial cause-in-fact); *Steinkamp v. Caremark*, 3 S.W.3d 191, 199 (Tex. App.—El Paso 1999, pet. denied) (expert evidence that plaintiff "may have suffered an isolated deep venous thrombosis" and that "possibly the catheter . . . could have acted as a nidus, or a thing that would trigger off clotting with the obstruction . . ." did not rise to required level of reasonable medical probability or raise a fact issue on causation).

There also was some evidence of other plausible causes of Smith's death, and Dr. Gupta made no attempt to exclude those causes with reasonable certainty. *See Jelinek*, 328 S.W.3d at 536; *Gibson v. Planned Parenthood Gulf Coast*, No. 14-18-00498-CV, 2019 WL 3432147, at *5 (Tex. App.—Houston [14th Dist.] Jul. 30, 2019, pet. denied) (mem. op.). Smith's attending physician at the hospital, in addition to attributing her death to cardiac arrest, made diagnoses of unspecified dementia without behavioral disturbance, essential hypertension, hypotension, hypolipidemia, unspecified, anemia, unspecified, and a personal history of TIA. Irwin Korngut, M.D., an expert witness designated by appellees, testified that the emergency physicians found no evidence to suggest that Smith was septic at the time of her death and did not list sepsis as a diagnosis. Dr. Korngut further testified that Smith's anemia, her known coronary disease, or internal bleeding could have caused cardiac arrest.

Finally, Dr. Gupta admitted that he could not testify to a reasonable degree of medical probability that Smith had a UTI or C. diff or that they had progressed into urosepsis or fulminant colitis:

> Q. You cannot testify to a reasonable medical probability that Ms. Smith suffered from a C. diff infection on April 12, 2019, correct?
>
> A. Correct.
>
> Q. You cannot testify to a reasonable medical probability that a C. diff infection caused fulminant colitis on April 12, 2019, correct?

A.    Correct.

Q.    Now, you also cannot testify to a reasonable medical probability that Ms. Smith suffered from a urinary tract infection on April 12, 2019, correct?

A.    Correct.

Q.    You cannot testify to a reasonable medical probability that any act or omission on the part of any defendant caused a C. diff infection on April 12, 2019 because one might not have existed, correct?

A.    Correct.

. . . .

Q.    You cannot testify to a reasonable medical probability of any act or omission on the part of any defendant caused fulminant colitis on April 12, 2019, correct?

A.    By itself, correct.

Q.    You cannot testify to a reasonable medical probability that any act or omission on the part of any defendant caused a UTI on April 12, 2019, correct?

A.    In case she did not have a UTI, correct.

Q.    You cannot testify to a reasonable degree of medical probability that any act or omission on the part of any defendant caused Ms. Smith to suffer from urosepsis on April 12, 2019, correct?

A.    In case there was no urosepsis.

Considering this testimony, as well as the other evidence before the trial court, we conclude that the trial court did not abuse its discretion in finding Dr. Gupta's opinions as to the causation of Smith's death unreliable and excluding them.

In his report and deposition testimony, however, Dr. Gupta also offered opinions regarding MHRC's standard of care, breach, and causation related to Smith's initial March 2019 hospitalization, and appellees' motion to exclude did not address those opinions. Accordingly, we must conclude that the trial court abused its discretion to the extent its order excluded "any expert testimony" by Dr. Gupta "for all purposes."

## 2. Summary Judgment

Appellees moved for no-evidence summary judgment, asserting, as they did in their motion to exclude, that there was no evidence of proximate cause with respect to Smith's death. Because the trial court did not abuse its discretion in excluding evidence of Dr. Gupta's opinions as to the causation of Smith's death,[4] appellant lacked any expert evidence to raise a fact issue on proximate cause and, therefore, did not meet his burden to produce more than a scintilla of evidence to show that appellees' negligence caused Smith's death. *See* TEX. R. CIV. P. 166a(i). Accordingly, we must conclude that the trial court properly granted no-evidence summary judgment in favor of appellees on appellant's wrongful death claim. *See Wakefield v. Pinnacle Anesthesia Consultants, P.A.*, No. 06-17-00056-CV, 2018

---

[4] Even had the trial court abused its discretion in excluding Dr. Gupta's opinions, we could not have considered his expert report as summary judgment evidence. *See Gomez v. Sani*, No. 05-20-00201-CV, 2023 WL 370179, at *5 n.4 (Tex. App.—Dallas Jan. 24, 2023, no pet.) (mem. op.) (citing *Kolb v. Scarbrough*, No. 01-14-00671-CV, 2015 WL 1408780, at *4 (Tex. App.—Houston [1st Dist.] Mar. 26, 2015, no pet.) (mem. op.) (unsworn expert report is incompetent summary-judgment evidence)).

WL 1734984, at *14 (Tex. App.—Texarkana Apr. 2, 2018, pet. denied) (mem. op.) (affirming no-evidence summary judgment after determining unreliable expert evidence on proximate cause was properly excluded). We overrule appellant's first issue.

Appellees also moved for (1) no-evidence summary judgment, asserting that Dr. Gupta's designation, report, and testimony failed to disclose the standard of care applicable to Beshir, a breach of the standard of care applicable to Beshir, or that any breach by Beshir proximately caused injury or damages; and (2) traditional summary judgment, asserting that affirmative evidence negated any breach by Beshir. In his second issue, appellant asserts the trial court erred in granting the summary judgment motion as to his claims against Beshir. Appellant contends, without citation to the record, that Beshir was "the nurse in charge" of Smith's care when "many of those acts and omissions were committed. Thus [Beshir] knows exactly what the standard of care issues are to him and exactly what Dr. Gupta's opinions are as it relates to how those specific standard of care violations were a proximate cause of damages." Appellant also points to deposition testimony of fact witnesses and Dr. Gupta's general deposition testimony that he includes Beshir in his criticisms of the MHRC nursing staff and nursing care provided to Smith.

Appellant's expert disclosure designating Dr. Gupta as an expert sets out his opinions on the standard of care applicable to MHRC, breaches of the standard of care by MHRC, and injuries caused to Smith by MHRC's breach of the standard of

care.  There is no mention of Beshir other than a reference that Dr. Gupta reviewed Beshir's deposition testimony.  The same is true for Dr. Gupta's report.  Further, Dr. Gupta testified as follows regarding Beshir:

Q.      Do you know who [Beshir] is?

A.      I know that he is part of this case or one of the nurses in this case.

Q.      Do you know what his title is, what –

A.      LVN.

Q.      You are looking at something. Did you have to refer to your notes to identify what his job was?

A.      My letter which has his name on it.

Q.      Do you know what involvement [Beshir] had in the care or treatment of Ms. Smith?

A.      I believe that he was taking care of her.

Q.      Do you know any specific breach of the standard of care that [Beshir] himself committed in this case?

A.      Not himself, but there are some breaches in the standard of care by the facility as a whole, and he may or may not have been involved specifically with any of them, but there—as a facility as a whole, I'm familiar with the breaches of the standard of care by the facility.

Q.      I understand what you are saying, Doctor, but you're giving expert testimony.  So I need to know whether you have an opinion that [Beshir] himself breached any standard of care in this case.

A.      No.

Q.   And you have no information or knowledge as to what [Beshir] did or did not do specifically with regard to Celia Smith; isn't that true?

A.   Correct.

"To preclude summary judgment in a medical malpractice case, the plaintiff must offer expert testimony on the essential elements of its claim, including the standard of care, breach, and causation." *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 10 (Tex. App.—Austin 2005, no pet.); *see also Chester v. El–Ashram*, 228 S.W.3d 909, 914 (Tex. App.—Dallas 2007, no pet.) ("Without expert testimony in a medical malpractice action, there is no issue to submit to the jury."). Dr. Gupta's testimony was the only expert evidence linking the alleged negligence of appellees to Smith's injuries, but he failed to link Beshir to any specific act or omission that was the proximate cause of Smith's injuries; indeed, he admitted that he had no information regarding what Beshir "did or did not do" with regard to Smith and had no opinion as to whether Beshir breached any standard of care. Accordingly, we conclude that appellees conclusively disproved an essential element of appellant's claims against Beshir and, therefore, the trial court did not err in granting appellees' traditional motion for summary judgment. We overrule appellant's second issue.

In a third issue, appellant contends that appellees waived their complaint that Dr. Gupta was not qualified to testify as to Beshir's standard of care. Having concluded for other reasons that the trial court properly granted traditional summary

judgment in Beshir's favor, we need not address appellant's third issue, which relates to appellees' no-evidence summary judgment motion. *See Hansen*, 525 S.W.3d at 680 (when trial court does not specify grounds on which it granted summary judgment motion, we must affirm if any grounds asserted in motion are meritorious); *Regency Dev. & Constr. Servs.*, 2019 WL 4051831, at *4 (when court is required to affirm traditional summary judgment, it need only address the traditional grounds).

### 3. Survival Action

In his fourth issue, appellant asserts that the trial court erred in granting relief not requested in appellees' summary judgment motion. Specifically, appellant contends that the trial court improperly entered a final summary judgment because appellees' motion failed to address appellant's survival action on behalf of Smith's estate to recover for injuries she suffered prior to her death. We agree in part.

An order issued without a conventional trial on the merits is final if it clearly and unequivocally states that it finally disposes of all claims and all parties, "even if review of the record would undermine finality." *See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam). When a defendant moves for summary judgment on only one or some of the claims asserted, and the trial court grants the motion and orders that the plaintiff take nothing, the judgment is erroneous, but final. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (per curiam); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

Here, the trial court's order granting appellees' summary judgment motion states that the motion "is in all things" granted and orders that appellant "shall take nothing by his claims against" appellees. The order constitutes a final judgment. *See Lehmann*, 39 S.W.3d at 200; *e.g.*, *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 362 (Tex. App.—Dallas 2009, pet. denied) (order granting summary judgment stating, in part, "that [plaintiff] take nothing against [defendants] by its suit" was final).

A wrongful death action is a cause of action that seeks recovery for negligent conduct that causes a death. *Cunningham v. Haroona*, 382 S.W.3d 492, 508 (Tex. App.—Fort Worth 2012, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 71.002. The damages recoverable in a wrongful death claim are for the exclusive benefit of defined statutory beneficiaries of a deceased person to compensate them for personal loss. *Cunningham*, 382 S.W.3d at 508. A survival action is a personal injury action that "survives to and in favor of the heirs, legal representatives, and estate of the injured person." *Id*. at 507 (quoting TEX. CIV. PRAC. & REM. CODE § 71.021). "Any recovery flows to those who would have received it had the decedent obtained the recovery immediately prior to her death—that is, her heirs, legal representatives, and estate." *Id*. Survival actions and wrongful death actions are separate and distinct causes of action. *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 35 (Tex. 1963); *e.g.*, *Cunningham*, 382 S.W.2d at 508 ("If there was evidence that negligence of [the defendant doctor] proximately caused injury to [the decedent]

that did not result in her death, the [plaintiffs] were entitled to separate submission of liability and damage questions for the survival action not conditioned on negative findings regarding the wrongful death action.").

Appellant's second amended petition states a survival claim, alleging that appellees' negligence proximately caused injury to Smith prior to her death. Specifically, appellant alleges that, based on a reasonable degree of medical probability, MHRC breached its standard of care by continuing Coumadin treatment without properly monitoring Smith's PT/INR levels and reporting an incorrect PT/INR was a proximate cause of her "significant epistaxis on March 28, 2019 which was a result of her being dangerously over coagulated" and her need for prolonged care in the hospital's intensive care unit.

Appellees' traditional summary judgment motion addressed both appellant's wrongful death claim and survival claim against Beshir; appellees sought summary judgment as to all claims against Beshir because, in part, there was no evidence of breach. However, with respect to appellant's claims against MHRC, appellees' summary judgment motion argued only that appellant failed to establish that appellees' negligence proximately caused Smith's death.

Because appellees did not move for summary judgment on appellant's survival action against MHRC to recover for the alleged negligence that caused injury to Smith prior to her death, we conclude the trial court's order erroneously

–21–

granted more relief than appellees requested.  *See Lehmann*, 39 S.W.3d at 200. Accordingly, we sustain appellant's fourth issue in part.

## Conclusion

We affirm the trial court's Order Granting Defendant's Motion for Summary Judgment in part and reverse in part.  We affirm the order to the extent that it grants no-evidence summary judgment in appellees' favor on appellant's wrongful death claim and traditional summary judgment in Beshir's favor on appellant's survival claim.  We reverse the order to the extent it grants no-evidence summary judgment on appellant's survival claim.  We also reverse the trial court's order excluding Dr. Gupta's testimony to the extent it excluded testimony on MHRC's standard of care, breach, and causation related to Smith's initial March 2019 hospitalization and appellant's survival claim.  We remand the case to the trial court for further proceedings in accordance with this opinion.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

221140F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

MARCUS SMITH,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF CELIA B. SMITH,
DECEASED, Appellant

No. 05-22-01140-CV        V.

NEXION HEALTH AT
MCKINNEY, INC. D/B/A
MCKINNEY HEALTHCARE AND
REHABILITATION CENTER AND
MENUR BESHIR, LVN, Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-02258.
Opinion delivered by Chief Justice
Burns.  Justices Molberg and Carlyle
participating.

In accordance with this Court's opinion of this date, the trial court's Order Granting Defendants' Motion for Summary Judgment is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order granting summary judgment in favor of appellee Nexion Health at McKinney, Inc. d/b/a McKinney Healthcare and Rehabilitation Center on appellant's survival claim against it.  In all other respects, the order is **AFFIRMED**.

The trial court's Order Excluding Testimony of Summit Gupta, M.D. is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's order to the extent that it excludes Dr. Gupta's testimony on appellee Nexion Health at McKinney, Inc. d/b/a McKinney Healthcare and Rehabilitation Center's standard of care, breach, and causation related to appellant's survival claim against it.  In all other respects, the order is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 11th day of August 2023.