**Reverse and Render in part; Reverse and Remand in part; Affirm in part; Opinion Filed August 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00855-CV

### MICHAEL WARD, Appellant
### V.
### WAYNE STANFORD, MORRIS TURMAN, BRANKA KARAKASHEVICH
### AND TRAVIS WARD, Appellees

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-12624-B**

## OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Moseley

This is an appeal of a summary judgment denying claims of fraud and mismanagement relating to a trust. Appellant Michael Ward, the plaintiff below, is a beneficiary of the trust. Appellees, defendants below, are the settlor and trustees of the trust.

The parties filed a series of motions for summary judgment in attempt to resolve two issues at the heart of their dispute. First, appellees sought summary judgment that limitations barred appellant's claims arising from the trustees' failure to pursue collection of a promissory note payable to the trust by the settlor. Second, appellees sought summary judgment that res judicata barred appellant's claims regarding the trust's ownership of certain assets. Appellant filed cross-motions for partial summary judgment on these issues. The trial court granted appellees' motions, denied appellant's, and rendered a take-nothing judgment for appellees. We

conclude appellant was entitled to prevail in part on his partial motions for summary judgment. We also conclude appellees did not establish a right to judgment as a matter of law on any of appellant's causes of action. Therefore, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

By trust instrument dated August 4, 1972, appellee Travis Ward and his then-wife, Martha, created an irrevocable trust for the benefit of their children (the "Trust"). Appellant, one of Travis and Martha Ward's four children, was a beneficiary of the Trust. Appellees Stanford, Turman, and Karakashevich were trustees of the Trust ("Trustees").[1]

Appellant sued the Trustees on October 3, 2008. He amended his petition to add Travis Ward as a defendant on September 14, 2009. Appellant pleaded numerous causes of action, but the crux of his complaint is that Travis Ward, with the aid of the Trustees, wrongfully used Trust assets for his own benefit. Appellees respond that appellant waited too long to assert his claims, and that courts in Henderson County, Texas, have already decided certain issues against him.

Although a jury trial commenced in mid-2011, the trial court declared a mistrial and subsequently heard the parties' motions for summary judgment. Relevant here are seven of these motions, which relate to two of the parties' central disputes. Appellees contend the trial court's resolution of these motions properly resulted in a final take-nothing judgment in their favor on all of appellant's claims. Appellant argues the trial court's rulings were error, and in any event did not resolve all of his claims.

---

[1] Appellee Stanford was a trustee from 1985 to 2003; Stanford is now deceased. Under Texas Rule of Appellate Procedure 7.1, we "proceed to adjudicate the appeal as if all parties were alive," and our judgment "will have the same force and effect as if rendered when all parties were living." TEX. R. APP. P. 7.1(a)(1). Karakashevich was Stanford's successor, serving as trustee from 2003 to 2010. Turman was a trustee from 1997 to 2010.

The first dispute, addressed by three of the motions,[2] is whether limitations barred appellant's claims relating to the Trustees' failure to collect a loan Travis Ward had obtained from the Trust. The loan was evidenced by a "Renewal Promissory Note" in the principal amount of $2,000,000 (the "Renewal Note").

The second dispute, which was the subject of four of the motions,[3] involves the effect in this lawsuit of two prior judgments. Appellant's claims rely on a judgment dated June 25, 1980, rendered by a district court in Henderson County as part of his parents' divorce proceedings (the "1980 Judgment"). The 1980 Judgment declared that the Trust owns certain specific assets, including two mineral leases in Henderson County. Appellees argue the 1980 Judgment is void and that appellant's claims are barred by res judicata based on an October, 2011 judgment rendered in the same proceeding in Henderson County (the "2011 Judgment").

The trial court signed an order dated February 24, 2012. The order is not a model of clarity.[4] However, construing it in light of the final judgment, we conclude the trial court: (1) denied appellant's cross-motion for partial summary judgment asserting the Renewal Note

---

[2] These motions are (1) "Travis Ward's Traditional and No Evidence Summary Motion for Summary Judgment to Dismiss Plaintiff's Claims and Request for Relief Under Rule 166a(e)," filed September 8, 2011; (2) the Trustees' traditional and no-evidence motion for summary judgment filed September 23, 2011; and (3) appellant's traditional motion for partial summary judgment filed November 21, 2011.

[3] These motions are (1) Travis Ward's traditional "Motion for Summary Judgment on Res Judicata," filed December 28, 2011; (2) the Trustees' joinder in the preceding motion, filed January 27, 2012; (3) Travis Ward's traditional and no evidence motion for partial summary judgment, filed January 19, 2011; and (4) appellant's traditional "Motion for Partial Summary Judgment Regarding Transfer of Title to Property Listed in the 1980 Judgment," filed November 21, 2011.

[4] The February 24, 2012 order states, in part:

> It is ORDERED, ADJUDGED, and DECREED that the motion for summary judgment [filed by appellant] regarding the Renewal Note being a non-negotiable instrument and accelerated is DENIED.
> It is ORDERED, ADJUDGED, and DECREED that Michael Ward's claims asserted against Travis Ward are barred by limitations as the alleged injuries were not inherently undiscoverable is [sic] GRANTED.
> It is ORDERED, ADJUDGED, and DECREED that Michael Ward's claims asserted against Morris Turman, Branka Karakashevich, and Wayne Stanford are barred by limitations as the alleged injuries were not inherently undiscoverable is [sic] GRANTED.
> It is ORDERED, ADJUDGED, and DECREED that Michael Ward's Motion for Partial Summary Judgment Regarding Transfer of title to Property Listed in the 1980 Judgment is DENIED.
> It is ORDERED, ADJUDGED, and DECREED that the 1980 Judgment is dormant, void, and of no legal force and effect is [sic] GRANTED.
> It is ORDERED, ADJUDGED, and DECREED that the motion for summary judgment on Res Judicata is GRANTED in part and DENIED in part. The motion is GRANTED as to the issue of Res Judicata but DENIED in seeking all claims against Travis Ward, Morris Turman, and Branka Karakashevich dismissed with prejudice.

–3–

was a negotiable instrument (and therefore subject to a six-year statute of limitations) and asserting the note had not been accelerated by the Trustees; (2) denied appellant's motion for partial summary judgment regarding the Trust's ownership of the property listed in the 1980 Judgment; (3) granted summary judgment on appellees' motion asserting the "1980 Judgment is dormant, void, and of no legal force and effect"; (4) granted in part appellees' motion for summary judgment asserting res judicata as an affirmative defense to appellant's claim based on the 1980 Judgment; and (5) granted appellees' motions for summary judgment asserting the claims against them "are barred by limitations as the alleged injuries were not inherently undiscoverable." Thereafter, the trial court entered a final judgment against appellant and in favor of appellees.[5] This appeal followed.

## ISSUES

In four issues, appellant complains of the trial court's judgment. In his first issue, appellant argues the trial court erred by granting appellees' motions for summary judgment on limitations, and by denying his cross-motion for partial summary judgment regarding negotiability and acceleration of the Renewal Note (both of which affect the limitations issues regarding the Renewal Note). In his second issue, appellant contends the trial court erred in its summary judgment ruling that the 1980 Judgment was dormant and therefore void. In his third issue, appellant complains the trial court erred by granting appellees' motions for summary judgment regarding their res judicata affirmative defense to his claims that the Trust owns the property listed in the 1980 Judgment. In his fourth issue, appellant contends the trial court erred

---

[5] The final judgment, dated May 23, 2012, states in part:

> The Court, having considered all such Motions, rendered its decision and, by Order dated February 24, 2012, denied Plaintiff's Motions for Partial Summary Judgment regarding negotiability of [sic] Renewal Note and for Partial Summary Judgment Regarding Transfer of Title to Property listed in the 1980 [] Judgment; and granted the Traditional and No-Evidence Motions filed by [Travis] Ward and Trustees Karakashevich and Turman on limitations, on alleged dormancy of the 1980 [] Judgment and on res judicata grounds (granted in part, denied in part). As a result of such rulings, it is
>
> ORDERED, ADJUDGED and DECREED that Plaintiff R. Michael Ward TAKE NOTHING on his claims against [Travis] Ward, Wayne Stanford, Karakashevich, and Turman . . . .

–4–

by denying his motion for partial summary judgment regarding the transfer of title to property listed in the 1980 Judgment.

<h3 style="text-align:center">STANDARD OF REVIEW</h3>

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. See TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009) (no-evidence summary judgment standard of review); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standard of review).

A no-evidence motion for summary judgment must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id.* In reviewing a no-evidence summary judgment motion, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus.,* 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006)). A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence supporting the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex. 2004).

A traditional motion for summary judgment must show there is no genuine issue as to a specified material fact and, therefore, the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). For a defendant to prevail on a traditional motion for summary

judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex. 1996); *Selz v. Friendly Chevrolet, Ltd.,* 152 S.W.3d 833, 836 (Tex. App.—Dallas 2005, no pet.). If the movant meets its burden, then and only then must the non-movant respond and present evidence raising a fact issue. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222–23 (Tex. 1999).

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id.*

## LIMITATIONS

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

### 1. The Renewal Note

In addition to the above elements of limitations, here the parties also dispute which limitations statute governs the Trustees' unpursued claims against Travis Ward for collection of the Renewal Note. Although they agree the four-year statute of limitations applies to appellant's claims for breach of fiduciary duty, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (West 2002), they dispute whether the Trustees had four years or six years to bring suit against Travis Ward for failure to pay the Renewal Note. The parties also dispute whether the due date for the Renewal Note was accelerated. We address these questions first because they were raised in appellant's cross-motions for partial summary judgment and because they provide the context for appellant's claims against the Trustees for failing to pursue collection of the Renewal Note.

#### a. Applicable limitations period

The limitations period applicable to the Trustees' claims against Travis Ward on the Renewal Note depends on whether the Renewal Note was negotiable. If it was, the Trustees had six years to sue Travis Ward for failure to pay. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a) (West 2002) (statute of limitations to sue on negotiable instrument is six years). If the Renewal Note was not negotiable, the Trustees had only four years to bring suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (statute of limitations to sue on debt is four years). The negotiability of an instrument is a question of law. *FFP Mktg. Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 408–09 (Tex. App.—Fort Worth 2005, no pet.).

A promissory note is a negotiable instrument if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer. *Id.* at 407 (citing TEX. BUS. & COM. CODE ANN. § 3.104(a)). A note is non-negotiable, however, if another instrument must be examined to determine the rights and obligations under

the note.  *See* TEX. BUS. & COM. CODE ANN. § 3.106(a) (West Supp. 2013); *FFP Mktg. Co.*, 169 S.W.3d at 408–09.

The Renewal Note, dated February 1, 1996, was signed by Travis Ward individually and on behalf of Ward Energy, Inc.  It was in the principal amount of $2,000,000, and payable to the Trustees on or before January 31, 2000.  The Renewal Note included the following provision:

> 12.  Restatement and Renewal.  Maker acknowledges and agrees that this Note is given in renewal and extension of, and amends and wholly restates, that certain note, dated December 27, 1985, in the original maximum stated principal amount of ONE MILLION TWO HUNDRED THOUSAND AND NO/100S DOLLARS ($1,200,000.00) as heretofore amended.  All liens and security interests securing such note, if any, are hereby preserved, renewed, and extended for the benefit of Payee and its successors and assigns.

The Renewal Note provided that it did not bear interest until January 31, 1998.[6]

Thus the Renewal Note contains a written, unconditional promise to pay a specific sum to the Trustees on or before a specific date.  Nevertheless, appellees argue the Renewal Note is not negotiable because it "amends and restates" rather than supersedes the 1985 note.  They contend the 1985 note contains a specific formula for calculating attorney's fees that is not included in the renewal note,[7] so the 1985 note must be examined to determine the parties' rights and obligations.  Appellees rely on *FFP Marketing Co.* and on *Midwest Medical Supply Co., L.L.C. v. Wingert*, 317 S.W.3d 530, 537–38 (Tex. App.—Dallas 2010, no pet.), to support their argument.  Appellees' cases are distinguishable.

In *FFP Marketing Co.*, the thirty-three promissory notes at issue specifically incorporated by reference the terms of other agreements, so the extent of the maker's liability could not be

---

[6] On May 1, August 1, and November 1, 1998, and February 1, 1999, Maker was to pay installments of $30,000 each that would be applied first to payment of accrued unpaid interest and then to principal.  On May 1, August 1, and November 1, 1999, and February 1, 2000, Maker was to pay "the full interest due and outstanding" as of each date.

[7] The 1985 note provided that "the undersigned agree[s] to pay ten per cent additional on the principal and interest then due hereon as attorney's fees."  The Renewal Note provides that "Maker agrees to pay a reasonable sum as attorneys' fees."

determined from the face of each note. *FFP Mktg. Co.*, 169 S.W.3d at 408. The notes did not contain either a sum certain or an unconditional promise to pay because examination of other documents was necessary to determine both the amount due and any conditions on payment. *Id.* There is no similar issue here. The paragraph of the Renewal Note quoted above provides that it "amends and wholly restates" the 1985 note, so reference to the 1985 note is not necessary to determine either the date or amount due, whether the obligation to pay is conditional, or the liability for attorneys' fees.

Appellees cite *Wingert* to support their argument that, because the attorney's fees provisions in the two notes are "not contradictory or inconsistent," both must be examined to determine the correct amount, making the Renewal Note non-negotiable. Our opinion in *Wingert* did not address the negotiability of a promissory note. *See generally Wingert*, 317 S.W.3d at 532–539. Instead, we determined which of two choice-of-law provisions would govern the parties' dispute. *See id.* We recognized the "general rule that when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent." *Id.* at 537–38. In contrast to the contracts in *Wingert*, here the Renewal Note expressly provides that it "amends and wholly restates" the 1985 note.

We conclude the Renewal Note is negotiable. *See* TEX. BUS. & COM. CODE ANN. § 3.104(a). Thus, the applicable statute of limitations for an action to enforce the Renewal Note is six years. TEX. BUS. & COM. CODE ANN. § 3.118. Because appellant established as a matter of law that the Renewal Note is negotiable, the trial court erred by denying his motion for partial summary judgment on this issue. *See Nixon*, 690 S.W.2d at 548–49.

### b. Acceleration of Renewal Note

Appellees also contend that even if the statute of limitations for enforcing the Renewal Note was six years, that time period began to run on May 21, 1998, the date they allege the Renewal Note was accelerated. If the Trustees accelerated the maturity of the Renewal Note, then the applicable six-year limitations statute would begin to run on the accelerated due date, not the due date or dates stated in the note. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a). We conclude appellees did not establish as a matter of law that the Renewal Note was accelerated.

The Renewal Note allows acceleration of the amounts due "at the option of the holder."[8] The summary judgment evidence included a demand letter to Travis Ward dated May 11, 1998, from Gregory Standerfer, an attorney representing the then-trustees. This letter recited the first installment under the Renewal Note was due and unpaid. The letter continued:

> Therefore, pursuant to the Note, this letter shall serve Payees' formal written notice to Makers that Makers have failed to pay the First Installment when due and payable on May 1, 1998 and in the event that Makers continue to fail to pay the First Installment to Payees for ten (10) days from the date of this correspondence as set out in the Note, Payees will pursue all of their legal rights pursuant to the Note, including, but not limited to, acceleration of all sums due pursuant to the Note.

Relying on *Texas Airfinance Corp. v. Lesikar*, 777 S.W.2d 559, 563 (Tex. App.—Houston [14th Dist.] 1989, no writ), appellees contend the Standerfer demand letter was sufficient to accelerate the Renewal Note. They argue the makers of the Renewal Note waived

---

[8] The Renewal Note states:

> The entire unpaid principal balance of, and all accrued interest on, this Note shall immediately become due and payable at the option of the holder hereof upon the failure by Maker to pay any installment due under this Note as and when same becomes due and payable in accordance with the terms hereof and said failure shall continue for ten (10) days following the date written notice was sent . . . .

–10–

notice of acceleration,[9] so acceleration was accomplished when the makers failed to make the payment demanded in the Standerfer letter.

Appellant contends the Standerfer letter did not actually accelerate the Renewal Note, but only threatened to do so if the amount due was not paid in ten days. Citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 563, 566 (Tex. 2001), appellant argues "an optional acceleration clause is not self-executing," but instead requires action on the part of the holder to effectuate. We conclude the analysis in *Holy Cross Church* is more applicable to the facts before us than the analysis in *Lesikar*.

In *Lesikar*, the maker and guarantor of a note appealed a summary judgment rendered in favor of the payee. *See Lesikar*, 777 S.W.2d at 561. The appellants contended there was a material fact issue regarding whether the note was accelerated. *Id.* at 563. The court of appeals disagreed, explaining the note "expressly provides for acceleration if, ten days after receipt of written notice of default, the default remains uncured." *Id.* The note also provided for acceleration without notice. *Id.* The court noted that in any event, there was summary judgment evidence of actual notice. *Id.* Where there was no summary judgment proof the default was cured, there was no fact issue concerning acceleration. *Id.* In contrast to *Lesikar*, here acceleration could occur "at the option of the holder hereof." *See Holy Cross Church*, 44 S.W.3d at 566 (where note contains optional acceleration clause, action accrues only when holder "actually exercises" option to accelerate).

Appellant also points to summary judgment evidence that two of the three Trustees voted against acceleration, and argues a majority vote was required to accelerate, citing section

[9] Paragraph 4 of the Renewal Note provides:

> Waiver. Except as expressly otherwise provided for herein, Maker waives demand, presentment, notice of nonpayment, notice of acceleration, notice of intent to accelerate, notice of protest and any and all lack of diligence or delay in collection or the filing of suit hereon which may occur.

–11–

113.085(a) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 113.085(a) (West Supp. 2013) (exercise of powers by multiple trustees; cotrustees may act by majority decision); *Holy Cross Church*, 44 S.W.3d at 566 (optional acceleration clause requires actual exercise to start running of limitations).[10]

Appellant offered summary judgment evidence that the then-trustees of the Trust disagreed on whether to accelerate the Renewal Note. A former trustee, Kirk Cobb, testified in a summary judgment affidavit that at a meeting of the trustees after the Standerfer letter was sent, two of the three trustees were not willing to vote to accelerate the Renewal Note. This unwillingness was consistent with a letter Cobb received in response to the Standerfer letter. In that response, dated May 20, 1998, Travis Ward's attorney stated "[i]t has been relayed to me that two of the three Trustees do not wish to proceed with collection of this Note at this time, due to Mr. Ward's financial position." The response letter also "question[ed] the authority [Standerfer's] firm may have in taking action on the [Renewal Note] (including acceleration and/or collection) until a majority of the Trustees deem it necessary to proceed."

Again citing *Holy Cross Church*, appellant contends that even if the Renewal Note was accelerated, the Trustees' subsequent vote "would have had the effect of withdrawing, revoking, and/or abandoning any alleged acceleration." *See Holy Cross Church*, 44 S.W.3d at 567 (citing *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ), for the proposition that "option to accelerate may be withdrawn or revoked after it is exercised by the noteholder, effectively restoring the note's original maturity date").

---

[10] Although the *Holy Cross Church* court addressed acceleration where there is a lien on real property, a similar rule applies to acceleration of promissory notes governed by the Texas Uniform Commercial Code. *See Shumway v. Horizon Credit Corp*., 801 S.W.2d 890, 892 (Tex. 1991) (if right to accelerate promissory note is optional, holder must notify maker of both intent to accelerate and acceleration).

The court in *Holy Cross Church* also discussed accrual of the cause of action. *See Holy Cross Church,* 44 S.W.3d at 566–67. In the case of a note payable in installments, the general rule is that a claim accrues and limitations begins to run on each installment when it becomes due. *Id.* at 566 (citing *Palmer v. Palmer*, 831 S.W.2d 479, 481–82 (Tex. App.—Texarkana 1992, no writ)). We discuss accrual below.

We conclude genuine issues of material fact exist regarding whether the maturity of the Renewal Note was accelerated and, if it was, whether acceleration was withdrawn, revoked, or abandoned. *See id.* at 567–68 (whether holder has accelerated note is a fact question). Thus the trial court did not err in denying appellant's cross-motion for partial summary judgment as to the acceleration and maturity date of the Renewal Note.

Our conclusions as to the negotiability and acceleration of the Renewal Note are relevant to the time available to the Trustees to pursue the note's collection. Thus, they impact whether– and when–the Trustees breached their fiduciary duties to appellant concerning the collection of the Renewal Note. But those conclusions, standing alone, do not resolve whether appellant's claims for breach of those duties are barred by limitations.

**2.      Accrual of claims against Trustees regarding Renewal Note**

To obtain summary judgment on appellant's claims against them relating to the non-collection of the Renewal Note, the Trustees were required to (1) conclusively prove when those causes of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *See KPMG Peat Marwick*, 988 S.W.2d at 748.

As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Quoting *Houston Water-Works Co. v. Kennedy*, 8 S.W. 36, 37–38 (Tex. 1888), the *Murphy* court explained a "legal injury" is "'an injury giving cause of action by reason of its being an invasion of a plaintiff's right . . . be the damage however slight.'" *Murphy*, 964 S.W.2d at 270 (quoting *Kennedy*).

### a. Legal injury

Appellant first argues his legal injury did not occur until the Trustees allowed the statute of limitations to run on the Trust's cause of action against Travis Ward for nonpayment of the Renewal Note. Until then, appellant argues, the Trustees could have fulfilled their fiduciary duties and sought recovery of the Trust's damages for Travis Ward's failure to pay the Renewal Note. Therefore, the Trust suffered no injury resulting from the Trustees' inaction until suit upon the Renewal Note was no longer possible. Assuming the Renewal Note matured according to its terms in 2000, appellant argues, the Trustees had until 2006 to sue Travis Ward for nonpayment and there was no breach of fiduciary duty until that time. Appellant asserts he then had four years after that date to pursue his breach of fiduciary duties claims against the Trustees relating to the Renewal Note, which he did by filing suit against the Trustees in 2008. [11]

The Trustees argue appellant seeks to impermissibly "stack" the statutes of limitations by adding the four-year period for appellant's breach of fiduciary duty claim to the limitations period applicable to Trustees' cause of action against Travis Ward on the Renewal Note. In contrast, they argue appellant's causes of action against them relating to the Renewal Note accrued at the same time their causes of action accrued against Travis Ward for nonpayment of the note. That is, they contend appellant's claims accrued on May 21, 1998, the date they argue the Renewal Note was accelerated by the May 11 Standefer demand letter.[12] In support of their position, the Trustees cite *Farias v. Laredo National Bank*. *See Farias v. Laredo Nat'l Bank*, 985 S.W.2d 465, 472–73 (Tex. App.—San Antonio 1997, pet. denied) (where "all the essential facts were known" regarding sale of trust property that allegedly cheated trust, beneficiaries' cause of action against trustee accrued at time of sale), *superseded by statute on other grounds as*

---

[11] Based on this analysis, appellant contends it is not necessary to apply the discovery rule to defer accrual.

[12] We have already concluded the Trustees did not prove as a matter of law that the maturity of the Renewal Note was accelerated.

*noted in Rice v. Louis A. Williams & Assocs., Inc.*, 86 S.W.3d 329, 333 n.2 (Tex. App.—Texarkana 2002, pet. denied).

In other words, the parties assert that, as a matter of law, appellant's breach of fiduciary duty claim accrued in lockstep with: (1) the first date the Trustees could have sued on the Renewal Note (as appellees contend); or (2) the last date they could have done so while avoiding Travis Ward's limitations defense (as appellant contends). We disagree with both contentions.

To agree with appellant, we would have to conclude the Trustees—as a matter of law—did not violate their fiduciary obligation to appellant until the date limitations barred their claim against Travis Ward on the Renewal Note. To agree with the Trustees, we would have to conclude—as a matter of law—that they violated their fiduciary duty by not filing suit on the first day after the Renewal Note matured (either by its terms or by acceleration). Based on this summary judgment record, we decline to reach either conclusion.

The fiduciary duty claims accrued when a wrongful act—an act or omission violative of the Trustees' fiduciary obligations to appellant—caused an injury, i.e. when they constituted "an invasion of . . . [appellant's] right . . . be the damage however slight." *See Murphy*, 964 S.W 2d at 270 (quoting *Kennedy*, 8 S.W. at 37–38). The ultimate issue remains: when did the Trustees' actions—or inaction—violate their fiduciary obligations and damage appellant?

Certainly the accrual date for claims against Travis Ward based on the Renewal Note is a factor relevant to when the breach of fiduciary claims accrued, but it is not dispositive of that question. The Trustees did not prove as a matter of law that their failure to sue on the Renewal Note the day after it was due constituted a breach of their fiduciary duty. And neither does the evidence show as a matter of law that the Trustees' failure to pursue collection of the Renewal Note was consistent with the faithful performance of their fiduciary duties up to the last possible

–15–

date they could have avoided Travis Ward's limitations defense by filing suit on the Renewal Note.[13]

At most, the parties' arguments delineate possibly the earliest date (maturity date of the note via acceleration or by its own terms) and the latest date (ten years thereafter) on which, to paraphrase *Murphy*, the Trustees' failure to pursue collection of the Renewal Note could be considered "'an invasion of [appellant's] right . . . be the damage however slight.'" *See Murphy*, 964 S.W.2d at 270 (quoting *Kennedy,* 8 S.W. at 37–38). However, just as the question of whether a party breached a fiduciary duty is generally treated as a fact question, *see, e.g., Fleming v Curry*, 412 S.W.3d 723, 734 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), we conclude the date on which the Trustees' inaction can be said to cross the line into a breach of their fiduciary obligations to appellant remains a fact question.

Additionally, as discussed below, there is another reason the trial court erred in granting summary judgment on the fiduciary duty claims related to the Renewal Note. Unless the evidence is undisputed, the question of whether a party breached a fiduciary duty generally is treated as one of fact. *See, e.g., Fleming*, 412 S.W.3d at 734. Based on the record before us, it is undisputed the Trustees failed to sue Travis Ward on the Renewal Note before limitations barred that claim. However, the date on which that failure constituted a breach of their fiduciary duty resulting in legal harm has not been proved as a matter of law. Thus, the trial court erred in granting summary judgment on appellant's claims against the Trustees regarding their failure to pursue collection of the Renewal Note.

---

[13] We do not consider *Farias* in disagreement with our conclusion. There, the relevant facts establishing the date of injury and the beneficiaries' knowledge of injury had been established by evidence offered at trial. *See Farias*, 985 S.W.2d at 472 (trial court's judgment notwithstanding the verdict was proper where evidence established that "shortcomings" of trustee "were obvious at or near the time of the sale, and certainly were within the four years following the sale").

–16–

### b. The discovery rule

As mentioned above, appellant also raised the discovery rule in response to the Trustees' motions for summary judgment asserting limitations as an affirmative defense to appellant's breach of fiduciary duty claims based on their failure to pursue collection on the Renewal Note. Appellant contends that even if the legal injury to the Trust occurred earlier than 2006, the discovery rule applies to delay accrual of his claims against the Trustees based on the Renewal Note.

The discovery rule is an exception to the legal injury rule. *Murphy*, 964 S.W.2d at 270. Under the discovery rule, an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. *Id.* (citing *S.V.*, 933 S.W.2d at 4). The discovery rule applies in cases of fraud, fraudulent concealment, and in other cases in which the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Id.* As we have noted, the Trustees bore the burden of negating the discovery rule. *KPMG Peat Marwick*, 988 S.W.2d at 748.

The trial court's order on the parties' summary judgment motions granted summary judgment to the Trustees in part because appellant's claims against the Trustees "are barred by limitations as the alleged injuries were not inherently undiscoverable." However, the supreme court has held a fiduciary's misconduct is inherently undiscoverable. *S.V.*, 933 S.W.2d at 8. And it is undisputed the Trustees owed fiduciary duties to appellant, a beneficiary of the Trust. *See, e.g., Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) ("[o]ur courts have long recognized that certain fiduciary duties are owed by a trustee to a beneficiary of the trust").

Moreover, the Trustees' motion for summary judgment did not assert appellant's claims against them relating to the Renewal Note were "not inherently undiscoverable." Therefore,

summary judgment on that basis was improper. *See Johnson*, 73 S.W.3d at 204 (trial court cannot grant summary judgment on grounds that were not presented). The Trustees' motion did assert, however, that appellant knew of these claims against them many years before he brought suit.

The supreme court has recognized "[w]hile a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.3d at 8. Thus, appellant's claim for breach of fiduciary duty against the Trustees accrued when appellant knew, or by exercising reasonable diligence should have known, the facts concerning the fiduciaries' conduct giving rise to his claim. *See id.*

In their motions for summary judgment, appellees failed to negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when appellant discovered, or in the exercise of reasonable diligence should have discovered the nature of his injury. *See KPMG Peat Marwick*, 988 S.W.2d at 748.

Relevant to the discovery rule, the Trustees contend appellant had actual knowledge of the facts giving rise to his claim "in the 1990s." They argue appellant knew or should have known of any wrongful act when he received a November 10, 1999, letter of resignation from Kirk Cobb, a former trustee of the Trust. Cobb wrote:

> The reasons for my resignation are as follows:
>
> 1.) Over the last year I have had no contact from the other two trustees despite repeated efforts to get them to attend meetings and to discuss trust business with me and despite repeated demands for an accounting for trust activities.
>
> 2.) I have learned that important trust business has been conducted without my knowledge and consent and the other trustees have refused to meet or discuss those matters with me.

3.) I am concerned that certain important business issues of the trust are being intentionally ignored and mishandled by the other trustees due to conflicts of interest on their part.

Cobb also enclosed a status report from the Trust's attorneys. The report: revealed that Travis Ward had failed to make four payments on the Renewal Note; explained that suit on the Renewal Note must be brought by April 30, 2002; and stated the Trust's attorneys had been instructed not to take any action except "monitor and advise the trustees of the pending statute of limitations deadline."

Relying on this evidence, appellees argue appellant's breach of fiduciary duty claims against them based on the Renewal Note are barred by the applicable four-year statute of limitations because, as a matter of law, appellant knew or should have known of his claims at the latest in 1999, approximately nine years before he brought suit in 2008.

As to claims against the Trustees relating to the Renewal Note, appellant points to his summary judgment affidavit that he was not aware until mid-2008 that Travis Ward had denied the existence of the Renewal Note. He testified that in 1998, he instructed Cobb not to allow the statute of limitations to expire on Travis Ward's outstanding indebtedness from to the Trust, and he relied on the Trustees to perform their fiduciary duties including collecting the indebtedness owed to the Trust. He was not informed of any decision the Trustees made to the contrary. In his affidavit, appellant also testified he received no disclosures from any of the Trustees after Cobb's resignation "other than periodic distributions to me as a beneficiary and my tax return." He testified he was unaware of accounts receivable owed to the Trust and additional payments to Travis Ward from the Trust. The Trustees did not respond to his request for information in 2008. It was not until 2008 that he learned of Travis Ward's self-dealing and the Trustees' failure to protect the Trust. Appellant also relies on evidence that not even Cobb was aware until this

–19–

lawsuit was filed that Travis Ward attempted in 1992 to obtain title to Trust assets through his lawyer's estate proceedings in Henderson County (the "1992 Order").[14]

In his detailed summary judgment response, appellant also relied on testimony of numerous witnesses regarding the Trustees' failure to carry out their fiduciary duties with respect to other transactions between the Trust and Travis Ward. He cited testimony that these matters were never disclosed to him, and alleged that the Trustees fraudulently concealed Travis Ward's misuse of Trust property. He offered his own explanation of what he knew and did not know "in the 1990s." He emphasized former trustees of the Trust had carried out their fiduciary duties by suing Travis Ward on the original promissory note (resulting in the execution of the Renewal Note), and argued he had no reason to know or suspect the Trustees would not again act accordingly in the event of default on the Renewal Note. Although appellees point to evidence appellant knew of Travis Ward's initial default on the first installment payment due on the Renewal Note in 1998, the record also reflects appellant had no information indicating the Trustees would allow limitations to expire, contrary to his express instruction. Appellant also relied on his testimony that he was completely unaware of Travis Ward's misuse of Trust property, including Travis Ward's claiming of Trust property for himself through the 1992 Order, until discovery in this lawsuit.

### c. Conclusion

Appellant asserted claims against the Trustees for breach of their fiduciary duty based on their failure to pursue collection of the Renewal Note. To prevail on their motion for summary judgment on those claims based on limitations, the Trustees were required to establish, as a matter of law, the date those causes of action accrued and to negate the discovery rule by

---

[14] The 1992 Order is dated December 18, 1992, and is entitled "Order Terminating Trust and Transferring Legal Title." The 1992 Order was made by a county court in Henderson County as part of the proceedings for the Estate of Willis D. Moore, Deceased, transferring title in nine mineral leases to Travis Ward.

proving, again as a matter of law, when appellant discovered or should have discovered the nature of his injury. *See KPMG Peat Marwick*, 988 S.W.2d at 748. The Trustees did neither. Genuine issues of material fact remain to be resolved on these issues. *See Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) (inquiries involving discovery rule usually entail questions for trier of fact). The trial court erred by granting the Trustees' motion for summary judgment on limitations grounds as to these claims. *See id.*

### 3. Accrual of causes of action against Travis Ward

The trial court's order on the parties' summary judgment motions recites that appellant's "claims asserted against Travis Ward are barred by limitations as the alleged injuries were not inherently undiscoverable," and grants Travis Ward's motion for summary judgment on the issue. The "inherently undiscoverable" inquiry relates to whether the discovery rule defers accrual of a plaintiff's claims. *See S.V.*, 933 S.W.2d at 6 (discussing application of discovery rule). For his claims against Travis Ward, however, appellant argues accrual is deferred because wrongdoing was fraudulently concealed. The supreme court "observe[s] a distinction" between deferral of accrual under the discovery rule and by fraudulent concealment "because each is characterized by different substantive and procedural rules." *Id.* at 4.

Fraudulent concealment is an affirmative defense to the statute of limitations. *See KPMG Peat Marwick*, 988 S.W.2d at 749. As a party asserting fraudulent concealment, appellant has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of that defense. *See id.* A party asserting fraudulent concealment must establish an underlying wrong, and that "the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)). Fraudulent concealment only tolls the running of

–21–

limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Id.* Unlike the discovery rule, the doctrine of fraudulent concealment is fact-specific. *Id.*

Appellant specifically pleaded and offered summary judgment evidence that, in addition to participating in the Trustees' breaches of fiduciary duty, Travis Ward fraudulently concealed the conduct giving rise to all of appellant's claims. Appellant's summary judgment response asserts Travis Ward and the Trustees fraudulently concealed their conduct. Appellant argued that until discovery in this suit, he was unaware of the 1992 Order or Travis Ward's claim that he, not the Trust, owned the Henderson County mineral leases. Appellant argued he was unaware that the Trust had mortgaged and pledged Trust assets; that Travis Ward borrowed additional monies from the Trust; that promissory notes from Travis Ward to the Trust were cancelled; and that the Trustees transferred cash from the Trust to Travis Ward. He pointed to evidence none of these transactions were disclosed to him. He also relied on evidence that the Trustees "all worked for [Travis Ward] and/or owed him substantial sums of money." He argued the Trustees' financial dependence on Travis Ward led to failures to disclose and other breaches of the Trustees' fiduciary duties.

Appellees contend fraudulent concealment does not apply to appellant's claims based on the mineral leases because the 1992 Order was a matter of public record, citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998). They argue appellant, as a beneficiary of the Trust, had an interest in the estate of Willis D. Moore, and thus had constructive knowledge of the 1992 Order. There are several flaws in this argument.

First, the 1992 Order arises out of the estate of Willis D. Moore, and terminates a "trust between Willis D. Moore and Travis Ward," not the Trust to which appellant is a beneficiary. Although Willis D. Moore was also a trustee of the Trust at the time of his death, appellees' cases do not hold that a person in appellant's position was an "interested person" in Moore's

estate for purposes of constructive notice.[15]  And in fact, in a summary judgment response not at issue in this appeal, Travis Ward contended appellant's claim that he was entitled to notice of Moore's probate proceedings when "he was not an heir, devisee, beneficiary, or otherwise had any claim of right to be involved in the proceedings," was "absurd."

Second, *HECI Exploration Co.* addressed the application of the discovery rule, not fraudulent concealment. *See id.* at 886.  In *HECI Exploration Co.*, owners of a royalty interest in an oil and gas lease sued to recover a share of the lessee's judgment against the operator of an adjoining lease for damage to a common reservoir. *See id.* at 883.  The court determined that a cause of action for damage to a common reservoir from illegal production was not "inherently undiscoverable," because as owners of an interest in a mineral estate, the plaintiffs had an obligation to exercise reasonable diligence in protecting their interests. *Id.* at 886.  The plaintiffs could have obtained information from their lessee or from public records about the existence of a common reservoir and the operations in it. *Id.*  The court explained, however, "[o]f course, if an operator fraudulently concealed information from a lessee, decisions of this and other courts indicate that limitations may be tolled." *Id.* (citing *S.V.*, 933 S.W.2d at 4).

Third, appellees' argument is only relevant to appellant's claims regarding the Henderson County mineral leases, not the entire case.

We conclude appellant raised genuine issues of material fact on fraudulent concealment. *See KPMG Peat Marwick*, 988 S.W.2d at 749.  A jury may eventually find that in the exercise of reasonable diligence, appellant knew or should have known of his causes of action against Travis

---

[15] *See HECI Exploration Co.*, 982 S.W.2d at 886 (noting rule that grantee has constructive notice of recorded instruments in chain of title); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) (thirty-two-year companion of decedent had constructive knowledge that decedent's will made no bequest to her as of date will admitted to probate); *Evans v. Allen*, 358 S.W.3d 358, 364–65 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (individual beneficiaries of prior will had constructive knowledge that will admitted to probate expressly excluded them as beneficiaries); *Schindler v. Schindler*, 119 S.W.3d 923, 928 (Tex. App.—Dallas 2003, pet. denied) (co-trustee and beneficiary of trust established under 1987 will was person interested in decedent's estate for application to probate later will).

Ward and the Trustees more than two or four years[16] prior to the date he filed suit. But summary judgment on appellees' limitations defense was not warranted. We sustain the portions of appellant's first issue that challenge the trial court's (1) grant of appellees' motions for summary judgment on limitations grounds and (2) denial of appellant's motion for summary judgment on the issue of negotiability of the Renewal Note. The trial court properly denied appellant's motion regarding acceleration of the Renewal Note, however. We overrule the portion of appellant's first issue that challenges this ruling.

### 4. Additional causes of action

Appellant's operative petition alleged numerous breach of fiduciary duty claims not related to the Renewal Note. Among other complaints, appellant alleged the Trustees failed "to perform basic trust functions"; failed to render an accounting; failed to investigate or act on Travis Ward's failure to repay loans from the Trust; and failed to disclose these actions to appellant. He also contends the Trustees' close business relationships with Travis Ward created "irreconcilable conflicts of interest" with their fiduciary duties to the Trust.[17] Appellant also alleged Stanford marked four promissory notes from Travis Ward to the Trust as "paid" when they were not, and executed an additional promissory note from the Trust to Travis Ward. Appellant alleged the Trustees "made no effort to rectify" numerous unlawful transactions made by Travis Ward. He detailed numerous other actions and inactions by the Trustees as the basis for his causes of action.

Appellant also alleged Travis Ward diverted assets from the Trust to himself by a variety of schemes; reduced an asset of the Trust to uncollected debt; defaulted on promissory notes;

---

[16] Travis Ward's motion for summary judgment asserted that appellant's conversion, unjust enrichment, civil theft, and tortious interference claims were governed by two-year statues of limitations, and appellant's fraud, breach of contract, and breach of fiduciary duty claims wer governed by four-year statutes of limitations.

[17] He pleaded that Turman and his company were indebted to Travis Ward for over $2 million; that Karakashevich was employed by Travis Ward; and that Stanford was "intimately involved" in Travis Ward's businesses and stood to benefit financially if the Trust did not sue Travis Ward to collect amounts due under the Renewal Note.

transferred oil and gas properties from the Trust; made purchases with Trust assets; used the Trust to obtain a $4.2 million bank loan, and used the proceeds of the loan to purchase aircraft; pledged the Trust's assets; initiated a court proceeding to terminate the Trust without notice to the beneficiaries and without revealing the existence of the 1980 Judgment and its terms; interfered with the Trust's business relationships; transferred Trust property to himself or business entities he owned; and made misrepresentations about the ownership of Trust assets, all to the detriment of the Trust. Appellant also contends Travis Ward participated in the Trustees' breaches of fiduciary duty through these actions.

The trial court's February 24, 2012, order granted appellees' motions for summary judgment on limitations grounds because appellant's injuries "were not inherently undiscoverable." The final judgment referenced the February 24, 2012 order and also recited that appellees' motions for summary judgment "on limitations" were granted.

Appellant's notice of appeal states that he desires to appeal from this judgment. Appellant states no limitation or restriction regarding any of his causes of action. In his brief, appellant argues that the trial court erred in granting appellees' motions for summary judgment on limitations grounds on his other claims because the motions did not address all of those claims and "lumped all of [appellant's] claims together and without establishing an accrual date for each claim."

Appellees in turn urge that appellant has "abandoned" the "18 or so other legal claims he asserted below," and has "greatly simplified the case by limiting his appeal to his claims for breach of fiduciary duty and aiding and abetting any such breach." They contend that appellant appeals the trial court's judgment only on those two issues, citing the trial court's judgment and appellant's notice of appeal. Appellant responds that the "wishful suggestion" he has abandoned any of his claims "is simply incorrect."

The Trustees filed a motion for summary judgment asserting that "[a]ll of [appellant's] claims against [them]—breach of contract, conversion, money had and received/unjust enrichment, tortious interference, conspiracy/aiding and abetting breaches of fiduciary duties, fraud, civil theft, alter ego, and his declaratory judgment claims—are barred by limitations" because the facts giving rise to the claims were known by appellant, "at the latest, in the 1990s." The substance of the Trustees' limitations-based motion, however, addresses only the causes of action relating to the Renewal Note that we have discussed above.

Travis Ward's motion for summary judgment also asserts that all of appellant's causes of action (listing breach of contract, conversion, money had and received/unjust enrichment, tortious interference, conspiracy/aiding and abetting breaches of fiduciary duties, fraud, civil theft, alter ego, and claim for declaratory judgment) are barred by limitations. Similarly, he raised the arguments about the Renewal Note already addressed, and asserted that appellant "had actual knowledge of his claims in the 1990s." While Travis Ward's motion more specifically addresses appellant's causes of action, it too is premised on the argument that appellant's claims accrued in the 1990s upon acceleration of the Renewal Note or upon information he received from Cobb.[18]

Summary judgment is proper only on grounds addressed in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (traditional motion for summary judgment must stand or fall on grounds expressly presented). As appellees' motions for summary judgment did not address the accrual dates for the other breaches of fiduciary duty and

---

[18] Appellant's responses to both of these summary judgment motions included a recital that the parties had entered into a Rule 11 agreement regarding the scope of the motion and response. Appellant stated that the only grounds advanced by appellees and to be addressed in his response were "those grounds . . . which contend (a) that Plaintiff's claims are barred by statute of limitations, and (b) that Plaintiff's breach of contract claim cannot be based on the 1980 Judgment." The Rule 11 agreement was included in appellant's summary judgment appendix filed in the trial court and is part of the appellate record. It is not clear from the record, and the parties do not clarify, whether this was an agreement to submit only some of appellant's claims for summary resolution, with the remainder to be resolved at trial, or whether the parties agreed to restrict the entire case to only these issues. The trial court's judgment, in any event, purports to dispose of all parties and all issues.

other causes of action pleaded by appellant, the trial court erred in disposing of those additional claims. We reverse the trial court's judgment on appellant's additional claims.

**THE 1980 JUDGMENT**

The remaining four motions for summary judgment at issue in this appeal addressed the parties' disputes regarding the effect of the 1980 Judgment and the 2011 Judgment on appellant's claims in this lawsuit. Appellant's second, third, and fourth issues challenge the trial court's rulings on these motions.

**1.    Background**

As noted above, appellant's claims that the Trust owns the two mineral leases in Henderson County rely on the 1980 Judgment rendered by a district court in Henderson County as part of his parents' divorce proceedings. The then-trustees of the Trust, as plaintiffs seeking declaratory relief, were parties to that litigation. The 1980 Judgment provides in relevant part:

> The Court . . . is of the opinion that:
>
> 1.  This Court has jurisdiction over the persons of the parties to this action, as well as over the subject matter of Plaintiffs' Complaint for Declaratory Relief;
>
> 2.  That Plaintiffs are Trustees under the Trust Agreement [for the Trust] . . .
>
> 3.  That the Trust Estate owns, among other things, the following property interests:
>
> > [a list of 25 specific items follows, including two mineral leases in Henderson County]
>
> 4.  That, although questions have been raised about the validity of the Trust and the Trust's property rights in the above-described real property, stocks, cash and other assets, as well as the right of the settlors to change, revoke, alter, amend or to terminate the Trust, the Court finds that the Trust Agreement was validly, knowingly, and freely entered into by the settlors and that, pursuant to its terms, can neither be changed, revoked, altered, amended or terminated by either Travis or Martha Ward;

–27–

5. That the Trust does own all of the property interests described in this Judgment, which properties were either validly transferred and assigned by the settlors to the Trust, or acquired by the Trustees on behalf of the Trust from the assets and income of the Trust.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That the Trust Agreement was validly and knowingly entered into by Defendants Travis and Martha Ward;

2. That the Trust has title to the property interests described in this Judgment, it having acquired the property interests either through valid transfer and assignment of the settlors or through acquisition by the Trustees in behalf of the Trust from the assets and income of the Trust . . . .

4. That all other and further relief not specifically granted herein is denied.

**2.     Is the 1980 Judgment void?**

Appellant's second issue challenges the trial court's ruling that "the 1980 Judgment is dormant, void and of no legal force and effect." Appellant's fourth issue complains of the trial court's denial of his request for a ruling that title to the property listed in the 1980 Judgment passed to the Trust.

In support of their argument that the 1980 Judgment is void, appellees rely on section 34.001 of the Texas Civil Practice and Remedies Code, which provides "[i]f a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record . . . , the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001 (West Supp. 2013). They argue that because a writ of execution was never issued, the dormant judgment's declaration that the Trust has title to certain specific assets is void and of no effect.

In response, appellant relies on section 31.001 of the Texas Civil Practice and Remedies Code to argue the 1980 Judgment was sufficient to pass title to the real and personal property

–28–

specified in it without execution.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.001 (West 2008) (judgment for conveyance of real property or delivery of personal property may pass title to property without additional action by party against whom judgment is rendered).

Neither party has cited us to any authority in which a court considered both sections 31.001 and 34.001 in determining whether a declaration of the ownership of property becomes void in the absence of the issuance of a writ of execution within ten years after rendition of the judgment.

The 1980 Judgment was a final judgment.  The then-trustees of the Trust were parties to that suit, as was Travis Ward.  Attorneys for the Trustees and Travis Ward approved the judgment on their clients' behalf.  The 1980 Judgment was not appealed.  Any issue as to title to the property in 1980 was finally determined by the 1980 Judgment.  *See, e.g., Francis v. Sterling*, 45 S.W.3d 194, 197 (Tex. App.—Tyler 2001, no pet.) (any issue as to title to real property was determined in prior judgment from which no appeal had been taken; in subsequent suit, appellant had no authority to file notice of lis pendens to prevent alienation of property).

Moreover, we conclude the 1980 Judgment is not rendered void by the failure to have it enforced by writ of execution.  As noted above, execution was not required for the 1980 Judgment to pass title to the property addressed by that judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.001. And appellees have not presented any other reason why execution on the 1980 judgment was necessary.

Section 34.001 by its express terms addresses execution on judgments, not the validity or effectiveness of the judgment itself.  *See* TEX. CIV. PRAC. & REM. CODE ANN. Chapter 34, Execution on Judgments, Subchapter A, Issuance and Levy of Writ, §§ 34.001–34.005 (West 2008 and Supp. 2013).  Dormancy only relates to whether a writ of execution may issue to enforce the judgment.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001.  But whether or not a

writ of execution is necessary to enforce the judgment does not affect the validity or finality of the 1980 Judgment's disposition of the parties and the issues in controversy.

In support of their motion, appellees quoted language in *Huff v. Huff*, 648 S.W.2d 286, 288 (Tex. 1983), that a dormant judgment "will have *become void of lawful effect* by operation of law" after the ten-year statute of limitation for reviving and enforcing the judgment has passed. (Emphasis added). Nevertheless, the citations employed by the supreme court do not compel the conclusion that a dormant judgment is void and of no effect.[19] Moreover, in more recent opinions the supreme court has adhered to the longstanding rule that a final judgment is void "only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'" *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (quoting *Browning v. Placke*, 698 S.W.2d 362, 368 (Tex. 1985)).

The supreme court also discussed void and voidable judgments in *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271–72 (Tex. 2012), noting "some inconsistency in our state's jurisprudence concerning important distinctions between void and voidable judgments and direct and collateral attacks." The court reiterated its explanation in *Browning* and in *Travelers Insurance Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010), that judgments are voidable rather than void unless the court rendering the judgment lacked jurisdiction or capacity to act. *PNS Stores, Inc.*, 379 S.W.3d at 272–73. The court also repeated its statement from *Browning* that "[w]hile no system is infallible, endless litigation, in which nothing was ever finally determined,

---

[19] The court cited the predecessor statute to section 31.006 of the Civil Practice and Remedies Code, regarding revival of judgments, and section 74(2) of the Restatement (Second) of Judgments. Section 31.006 allows revival of a dormant judgment "not later than the second anniversary of the date that the judgment becomes dormant." TEX. CIV. PRAC. & REM. CODE ANN. § 31.006 (West 2008). Section 74(2) of the Restatement (Second) of Judgments provides "relief from a judgment will be denied if . . . the application for relief is barred by lapse of time." RESTATEMENT (SECOND) OF JUDGMENTS § 74 (1982).

would be worse than the occasional miscarriages of justice." *Id.* at 274 (quoting *Browning*, 165 S.W.3d at 348 (internal quotes omitted)).

Allowing appellees to challenge the 1980 Judgment in which the parties' disputes regarding the Trust's ownership of property were finally determined would result in the "endless litigation" rejected by the supreme court. We conclude the 1980 Judgment's declaration of the ownership of the Trust property is not void.[20] The trial court's rulings to the contrary, granting appellees' motions for summary judgment on this issue and denying appellant's, were error. We sustain appellant's second and fourth issues.

## Res Judicata and the 2011 Judgment

Appellant's third issue challenges the trial court's ruling granting summary judgment that the 2011 Judgment is res judicata of appellant's claims in this lawsuit.

After the trial court's April 2011 interlocutory summary judgment ruling that the 1980 Judgment was void, appellant filed an application for supplemental relief under section 37.011 of the Texas Civil Practice and Remedies Code in the district court of Henderson County, Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 (West 2008) (further relief based on declaratory judgment may be granted whenever necessary or proper). His application was filed under the cause number of his parents' divorce proceeding. Appellant requested that the Henderson County court render supplemental relief protecting and enforcing the declaratory relief granted in the 1980 Judgment. In his application, appellant also complained of the 1992

---

[20] We note we must decide this issue in order to address the issues before us on appeal. However, our decision is not dispositive of any claim or defense in this lawsuit. A determination that the Trust owned certain property as of 1980 does not establish that Travis Ward later misused Trust assets, that the Trustees breached fiduciary duties with respect to those assets, that property once owned by the Trust was later either properly or improperly used or transferred, or that appellant could not have learned of his causes of action arising from misuse of trust assets more than four years before he sued. The Trust's ownership of the property in 1980 is only one of many facts to be considered in determining the issues raised by the pleadings.

Order.[21] Under "relief sought," appellant listed ten specific declarations, all addressing the continuing validity of the 1980 Judgment and appellees' actions that were inconsistent with the declarations in the 1980 Judgment. The Henderson County court signed the 2011 Judgment denying appellant's application.[22]

The Tyler Court of Appeals affirmed the 2011 Judgment. *See Ward v. Ward*, No. 12-11-00368-CV, 2012 WL 2513668, at *3 (Tex. App.—Tyler June 29, 2012, no pet.) (mem. op.). Concluding appellant had not challenged all of the independent bases for the trial court's judgment, the court of appeals did not address the merits of the issues raised by appellant. *See id.* at *2 (appellant did not attack all grounds appellees alleged for denying application that could if meritorious support trial court's judgment; judgment must be affirmed if it can be upheld on any legal theory that finds support in evidence).

Appellees then moved for summary judgment in the trial court, contending the 2011 Judgment was res judicata of appellant's claims in this suit.[23] The trial court granted the motion in part and denied it in part, ruling:

> The motion for summary judgment on *Res Judicata* is GRANTED
> in part and DENIED in part. The motion is GRANTED on the

---

[21] Pursuant to the 1992 Order, Travis Ward contends that he, not the Trust, owns the two Henderson County mineral leases referenced in the 1980 Order. The 1992 Order attaches a letter dated February 23, 1967, from Willis D. Moore to Travis Ward, listing nine mineral leases and stating that Moore "hold[s] the . . . leases in trust" for Ward.

[22] That judgment states:

> On this day came before the Court the Application for Supplemental Relief filed by R. Michael Ward. Upon consideration of the Application, the response, and the arguments of counsel, the Court hereby DENIES the Application.
>
> It is so ORDERED.

[23] Appellees' motion also included an argument that because appellant's application for supplemental relief in Henderson County alleged the 1992 Order was obtained by fraud, the 2011 Judgment denying that application bars appellant's complaint in this case that the 1992 Order was obtained by fraud and in contravention of the 1980 Judgment. Neither of Travis Ward's motions for summary judgment based on res judicata asserted that the 1992 Order itself is res judicata of appellant's claims. As explained above, Travis Ward claims that by virtue of the 1992 Order, he individually owns the two Henderson County mineral leases referenced in the 1980 Judgment. His "Traditional and No Evidence Motion for Partial Summary Judgment" filed on January 19, 2011, sought summary judgment on appellant's conversion and "knowing participation in breaches of fiduciary duties" claims against him. The grounds for this motion were that the 1980 Judgment was dormant and void, and as a result, appellant lacked evidence that the Trust owned any property that could have been converted by Travis Ward. Travis Ward also argued that the 1980 Judgment was not a contract that could be enforced by the trial court. Travis Ward's "Motion for Summary Judgment on Res Judicata" filed on December 28, 2011, alleged that all of appellant's claims were barred by the 2011 Judgment.

issue of *Res Judicata* but DENIED in seeking all claims against [appellees] dismissed with prejudice.

Appellant argues the trial court erred "in ascribing res judicata effect to a simple denial of an application for supplemental relief on a declaratory judgment."

Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). Res judicata requires proof of (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action on the same claims as were raised or could have been raised in the first action. *Id*. Appellees bore the burden of proving the elements of this affirmative defense as a matter of law. *Friendswood Dev. Co.,* 926 S.W.2d at 282.

Texas courts apply the "transactional approach" to res judicata, which requires claims arising out of the same subject matter to be litigated in a single lawsuit, preventing "needless, repetitive litigation." *See Hallco Tex., Inc. v. McMullen Cnty*., 221 S.W.3d 50, 58 (Tex. 2007). The supreme court has explained that the "transactional test" from the Restatement (Second) of Judgments "suggests factors to consider in determining whether facts constitute a single 'transaction' are 'their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798–99 (Tex. 1992) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1980)).

The parties' dispute focuses on the third element, whether the claims pending in the trial court could have been raised in Henderson County. In its memorandum opinion affirming the 2011 Judgment, the Tyler Court of Appeals described the subject matter of the 2011 Henderson County proceeding. *See Ward*, 2012 WL 2513668, at *1–2. Appellant requested the court to

–33–

declare and order the 1980 Judgment was valid and subsisting, and not dormant or void. *See id.* He also requested Travis Ward and the Trustees be enjoined from contending the 1980 Judgment is void. *See id.*

The *Ward* opinion reflects that appellees' own pleadings in that proceeding complained that the requested declaratory relief "would not resolve the controversy between the parties," did not include all necessary parties, and was not "necessary, proper, or ancillary to the 1980 judgment."[24]

Section 37.011, under which appellant sought relief in Henderson County, permits a trial court to grant supplemental relief based on a declaratory judgment when further relief is "necessary or proper." TEX. CIV. PRAC. & REM. CODE ANN. § 37.011. Relief under section 37.011 must be ancillary to the judgment. *See State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66 (Tex. App.—Austin 2005, pet. denied). Section 37.011 does not permit parties to relitigate issues already resolved by a declaratory judgment. *Id.* "Typically, further relief under section 37.011 is granted in the form of an injunction for the purpose of enforcing a declaratory judgment where the evidence shows that a party will not comply with the judgment." *Id.* Suits under section 37.011 are an exception to the rule of res judicata. *See Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 336 (Tex. App.—Dallas 1973, no writ) (judgment declaring validity of ordinance did not bar application for supplemental injunctive relief). Therefore, appellant could seek supplemental relief to enforce the 1980 Judgment, but neither he nor the appellees

---

[24] Appellees' responsive pleadings were summarized in the opinion:

> More specifically, Travis asserted that the Henderson County court lacked jurisdiction to enter injunctive relief, that Michael's requested declaratory relief would not resolve the controversy between the parties and would not render the Dallas judgment [the trial court's April 2011 partial summary judgment ruling] invalid or moot, and that supplemental relief was not necessary, proper, or ancillary to the 1980 judgment. He asserted further that Michael's claims are barred in whole or in part by doctrines of waiver, estoppel, and laches, that Michael failed to join all necessary parties, and that Michael seeks unconstitutional relief by enjoining the speech of Travis and the two trustees. Finally, Travis contended that Michael's requested relief is an impermissible collateral attack on the Dallas judgment because the Dallas judgment is not void on its face, nor did Michael make such a claim, and the 1980 judgment is dormant as a matter of law.

*Id.* at *1.

could relitigate the issue of the Trust's ownership of the property listed in the 1980 Judgment. *See Anderson Courier Serv.*, 222 S.W.3d at 66.

Appellees argue all of appellant's claims in this lawsuit could have been raised in the Henderson County application for supplemental relief, and are therefore barred by res judicata. *See Amstadt*, 919 S.W.2d at 652. They further argue the Henderson County court's denial of supplemental relief must be interpreted as a judgment declaring the 1980 Judgment is void, because the Henderson County court denied appellant's request for a declaration the 1980 Judgment was "valid and subsisting" and "not dormant, void or of no legal force or effect." We disagree with both of these propositions.

First, actions under section 37.011 are limited to "[f]urther relief based on a declaratory judgment or decree." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011. Appellant's claims in this lawsuit are not limited to claims related to the 1980 Judgment and could not have been asserted in the application for supplemental relief. Second, the Henderson County court could not relitigate the issues resolved in the 1980 Judgment, *see Anderson Courier Serv.*, 222 S.W.3d at 66; therefore, we cannot construe its denial of supplemental relief as a judgment affirmatively declaring the opposite of its 1980 ruling.

The trial court erred by granting summary judgment that the 2011 Judgment barred appellant's claims in this lawsuit. We sustain appellant's third issue.

**CONCLUSION**

We conclude a genuine issue of material fact exists regarding whether the Renewal Note was accelerated; therefore, the trial court correctly denied appellant's cross-motion for partial summary judgment on this issue, and we overrule the portion of appellant's first issue challenging this ruling. We sustain the remainder of appellant's first issue. We sustain

appellant's second, third, and fourth issues.  We remand the case to the trial court for further proceedings.

/Jim Moseley/
JIM MOSELEY
JUSTICE

120855F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL WARD, Appellant

No. 05-12-00855-CV        V.

WAYNE STANFORD, MORRIS
TURMAN, BRANKA
KARAKASHEVICH, and TRAVIS WARD,
Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 08-12624-B.
Opinion delivered by Justice Moseley,
Justices Bridges and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED AND RENDERED** in part, **REVERSED AND REMANDED** in part, and **AFFIRMED** in part. We **REVERSE** the portion of the trial court's judgment denying summary judgment to appellant Michael Ward on the issues of negotiability of the promissory note at issue and the validity of a 1980 Henderson County Judgment, and **RENDER JUDGMENT** that the promissory note at issue is negotiable and the 1980 Henderson County Judgment is not void. We **REVERSE** the portion of the trial court's judgment granting summary judgment to appellees Wayne Stanford, Morris Turman, Branka Karakashevich, and Travis Ward. We **AFFIRM** the portion of the trial court's judgment denying appellant Michael Ward's motion for summary judgment on the issue of acceleration of indebtedness under the promissory note at issue. In all other respects, the judgment of the trial court is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Michael Ward recover his costs of this appeal from appellees Wayne Stanford, Morris Turman, Branka Karakashevich, and Travis Ward.

Judgment entered this 14th day of August, 2014.